———————————————
CASE NO. 13-6447
———————————————

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

———————————————

Carlos Ortiz,

Petitioner-Appellant,

v.

UNITED STATES OF AMERICA,

Respondent-Appellee.

———————————————

On appeal from the United States District Court for the District of Maryland
William D. Quarles, Jr., Judge; Case No. 1:12-cv-00689-WDQ
(Denial of Petition for Writ of Audita Querela)

———————————————

## OPENING BRIEF

———————————————

For Appellant: William B. Norman, Esq.
Norman & Tayeh, LLC.
795 Sharon Drive
Westlake,Ohio44154

TABLE OF CONTENTS

TABLE OF CONTENTS ……………………………………………………………i

TABLE OF AUTHORITIES ...............................................................................iii

JURISDICTION ...…………………………………………………………...1

ISSUES PRESENTED....................................................................................... 2

    I.    Whether the district court's denial of Ortiz's bona fide audita querela petition, whereby it refused to hear the merits of Ortiz's statutory interpretation claim, constitutes reversible error, where the denial exists as the sole product of a clearly erroneous legal conclusion: *that Ortiz's statutory interpretation claim was cognizable under § 2255 as an Apprendi claim, so as to preclude invocation of audita querela, despite that the clear thrust of Ortiz's premises for relief under audita querela were that Jones v U.S. and U.S. v Promise interposed clarifying statutory interpretations* .................................................. 2

    II.    Whether the district court's total disregard of the miscarriage of justice claim for relief at Point Three of Ortiz's petition mandates reversal for the district court to address the issue before appellate review can transpire ...................... 2

    III.    Whether a Certificate of Appealability is unnecessary for this court to undertake appellate review of the district court's final order disposing of Ortiz's audita querela petition.......................................................................... 2

    IV.    Whether the decidedly modest standard for a COA is met where Ortiz was denied his due process rights guaranteed by the Fifth Amendment to be sentenced within the statutory maximum applicable to the crime for he was charged and convicted when he was sentenced to life imprisonment on the basis of an indicted offense authorizing imposition of a maximum penalty of 20 years .......................................................................................................... 3

    V.    Whether the decidedly modest standard for a COA is met where Ortiz was denied his Sixth Amendment to a jury trial on the charge of *Conspiracy to traffic in heroin and fentanyl resulting in death* where the district court expressly enjoined a trial on the central element of this crime but proceeded at the close of trial to take further evidence on that element and return a verdict of guilt as to same ........................................................................................... 3

STATEMENT OF THE CASE................................................................... 3

THE FACTS ........................................................................................... 4

SUMMARY OF ARGUMENT ................................................................ 10

ARGUMENT…………………………………………………………..12

I.    THE DISTRICT COURT'S DENIAL OF ORTIZ'S CONFORMING AUDITA QUERELA PETITION, WHEREBY IT REFUSED TO HEAR THE MERITS OF ORTIZ'S STATUTORY INTERPRETATION CLAIM, CONSTITUTES REVERSIBLE ERROR, WHERE THE DENIAL EXISTS AS THE SOLE PRODUCT OF A CLEARLY ERRONEOUS LEGAL CONCLUSION: *THAT ORTIZ'S STATUTORY INTERPRETATION CLAIMS WERE COGNIZABLE UNDER § 2255 AS APPRENDI CLAIMS, SO AS TO PRECLUDE INVOCATION OF AUDITA QUERELA, DESPITE THAT THE CLEAR THRUST OF ORTIZ'S PREMISES FOR RELIEF UNDER AUDITA QUERELA WAS THAT JONES V U.S. AND U.S V PROMISE INTERPOSED CLARIFYING STATUTORY INTERPRETATIONS* ....................................... 12

II.    THE DISTRICT COURT'S TOTAL DISREGARD OF THE MISCARRIAGE OF JUSTICE CLAIM FOR RELIEF AT POINT THREE OF ORTIZ'S PETITION MANDATES REVERSAL FOR THE DISTRCT COURT TO ADDRESS THE ISSUE BEFORE APPELLATE REVIEW CAN TRANSPIRE ................................................................................ 21

III.    A CERTIFICATE OF APPEALABILITY IS NOT NEEDED FOR THIS COURT TO UNDERTAKE APPELLATE REVIEW OF THE DISTRICT COURT'S FINAL ORDER DISPOSING OF ORTIZ'S AUDITA QUERELA PETITION.................................................................................. 25

IV.    JURISTS OF REASON WOULD DEBATE WHETHER THE DISTRICT COURT'S PROCEDURAL RULING, WHEREBY IT DISPOSED OF ORTIZ'S AUDITA QUERELA PETITION PURSUANT TO THE PROTOCOL PRESCRIBED FOR SUCCESSIVE § 2255 MOTIONS, WAS CORRECT ................................................................................ 27

CONCLUSION……………………………………………………………..30

STATEMENT REGARDING ORAL ARGUMENTS…………………………………30

CERTIFICATE OF COMPLIANCE………………………………………………31

CERTIFICATE OF SERVICE…….………………………………………………31

ii

TABLE OF AUTHORITES

**Cases**

Barefoot v. Estelle, 463 U.S. 880 (1983) — 27

Clisby v. Jones, 960 F.2d 925 (11th Cir.1992) (en banc) — 22

Davis v. United States, 417 U.S. 333 (1974) — 15

Drax v Reno, 338 F.3d 98 (2d Cir. 2003) — 26

Harris v Johnson, 52 Fed. Appx. 838 (4th Cir. 2009)(unpublished) — 25

Houston v Lack, 487 U.S. 266 (1988) — 1, 21

Kamiensi v Hendrics, 323 Fed. Appx. 740  (3d Cir. 2009)(unpublished) — 24

Lambright v Stewart, 220 F.3d 1022 (9th Cir. 2000) — 27

Lang v. United States, 474 F.3d 348 (6th Cir.2007) — 13

McClesky v Zant, 499 U.S. 494 (1991) — 8, 23, 24

Medellin v. Dretke, 544 U.S. 660 (2005) — 27

Murphy v. United States, 199 F.3d 599 (2d Cir.1999) — 26

Murray v Carrier, 477 U.S. 478 (1986) — 23

Reid v. Angelone, 369 F.3d 363, 369 (4th Cir. 2004) — 27

Slack v. McDaniel, 529 U.S. 473  (2000) — 28

United States v. Cornett, 350 Fed. Appx. 849 (5th Cir. 2009)(unpublished) — 25

United States v Holder, 936 F.3d 1 (1st Cir 1991) — 15

United States v. Holt, 417 F.3d 1172 (11th Cir.2005). — 13

United States v Patterson, 38 F.3d 139 (4th Cir. 1994) — 19

United States v Torres, 22 F.3d 1241 (10th Cir. 2002) — 1

Whittle v. Timesavers, Inc., 749 F.2d 1103) (4th Cir.1984) — 21

Wolfe v Johnson, 565 F.3d 140, 164 (4th Cir. 2009) — 22

**Statutes**

21 U.S.C. § 841 ............................................................................... passim

28 U.S.C. § 1651…………………………………………………1,3, 7, 11

28 U.S.C. § 2255 ............................................................................... passim

28 U.S.C. § 2241………………………………………………18, 20, 26

## JURISDICTION

This matter came on in the district court as a petition for issuance of a writ of audita querela (filed March 2, 2012), the district court having jurisdiction to entertain same under 28 U.S.C. § 1651 (the "All Writs Act"). Id. On March 13, 2012, the district court issued a dispositive order denying the petition, electing to dispose of the petition under the laws applicable to 28 U.S.C. § 2255 motions as oppose to those governing bona fide audita querela petitions.

On April 16, 2012, Appellant filed a Civil Rule 59(e) motion seeking vacatur of that order of denial on the basis of a clear error of law. That motion was denied after near 9 months of consideration on January 10, 2013.

A timely notice of appeal was filed on February 27, 2013[1], identifying both of the above orders.

This Court's appellate jurisdiction emanates from 28 U.S.C. § 1291, which provides for the exercise of appellate review authority over final orders issued by a district court.

In this particular case, where the appellate challenge seeks review of an order which actually "denies" a petition for a writ of audita querela based on a reversible legal conclusion as to its veritability (mischaracterizing the petition as a second § 2255 attempt), it is yet this Court's § 1291 jurisdiction which governs,

---

[1] Ortiz's notice of appeal was filed pursuant to the mailbox rule of Houston v Lack, 487 U.S. 266 (1988); See Attachment 1 to D.E. # 6.

1

s*ee, e.g., United States v Torres,* 22 F.3d 1241, 1247 (10th Cir. 2002)(holding that a COA is not required where a district court either denies a petition for writ of audita querela or transfers same to the appellate court as an impermissible second § 2255 motion.).

## ISSUES PRESENTED

**Whether the district court's denial of Ortiz's bona fide audita querela petition, whereby it refused to hear the merits of Ortiz's statutory interpretation claim, constitutes reversible error, where the denial exists as the sole product of a clearly erroneous legal conclusion: *that Ortiz's statutory interpretation claim was cognizable under § 2255 as an Apprendi claim, so as to preclude invocation of audita querela, despite that the clear thrust of Ortiz's premises for relief under audita querela were that Jones v U.S. and U.S. v Promise interposed clarifying statutory interpretations***

**Whether the district court's total disregard of the miscarriage of justice claim for relief at Point Three of Ortiz's petition mandates reversal for the district court to address the issue before appellate review can transpire**

**Whether a Certificate of Appealability is unnecessary for this court to undertake appellate review of the district court's final order disposing of Ortiz's audita querela petition**

**Whether the decidedly modest standard for a COA is met where Ortiz was denied his due process rights guaranteed by the Fifth Amendment to be sentenced within the statutory maximum applicable to the crime for he was charged and convicted when he was sentenced to life imprisonment on the basis of an indicted offense authorizing imposition of a maximum penalty of 20 years**

**Whether the decidedly modest standard for a COA is met where Ortiz was denied his Sixth Amendment to a jury trial on the charge of *Conspiracy to traffic in heroin and fentanyl resulting in death* where the district court expressly enjoined a trial on the central element of this crime but proceeded at the close of trial to take further evidence on that element and return a verdict of guilt as to same**

## STATEMENT OF THE CASE

On 3-12-2012, Carlos Ortiz brought in the district court the underlying petition for a writ of audita querela under 28 U.S.C. § 1651, contending that a development in the law revealed a fundamental defect in the judgment against him. [D.E. # 1; Appendix 3-54].

On 3-13-2012, the district court issued a memorandum order denying the petition noting that it would deny any certificate of appealability. [D.E. ## 2 and 3; Appendix 55-60].

On 4-16-2012, Ortiz brought a timely motion pursuant to Rule 59(e), F.R.Civ.Pr., requesting the district court to vacate its order of denial as constituting a clear error of law. [D.E. # 4; Appendix 61-72]. The court denied that application the following year on January 10, 2013. [D.E. # 5; Appendix 73-74].

On February 27, 2013, Ortiz noticed his intent to appeal the district court's orders both in the denial of his petition and the subsequent denial of his application for the court to vacate that order.  [D.E. # 6; Appx. 75-76].

On 7-11-2013, the undersigned perfected a notice of appearance on behalf of Appellant Ortiz. [D.E. # 7 (4th Cir. No. 13-4667); Appendix 77].

Ortiz has been granted permission by this Honorable Court to proceed here as a pauper, as ordered on 10-4-2013. [D.E. # 20 (4th Cir. No. 13-4667); Appendix 78].

This instant brief comes as the opening brief in this cause.

## THE FACTS

The appellant before this Appellate Court has been in prison for over 20 years to date, a non-violent drug offender who has been incarcerated since he was 23 years old. He will spend the rest of his life in prison serving out an illegal life sentence where the statute under which he proceeded to trial authorized the district court to meet out a maximum 20-year sentence. As follows.

Ortiz was charged in 1992 alongside an assortment of other individuals with, as relevant here, conspiring to distribute heroin and fentanyl in the Baltimore, Maryland area.  *Indictment* (Count 1), 92-cr-301; Appx. 79]. The specific section of the federal drug trafficking statute that he was charged with violating was 21 U.S.C. § 841(a).  *Ibid*.  That charge carries a statutorily authorized maximum

sentence of 20 years' imprisonment, where it applies to unquantified drug convictions. 21 U.S.C. § 841(b)(1)(C). Ortiz's conviction is undisputedly such an unquantified conviction. See Petition for Writ of Audita, at 13; Appendix 15.

In 1993, the district court imposed a life sentence on Ortiz after making a finding that he was culpable for the deaths of users whom had procured narcotics distributed by the conspiracy that he was convicted as being a member of. See Petition, at 10-14; Appendix 12-16. The sentencing court determined that the jury's verdict of guilt on the drug charge itself was sufficient to animate the court's authority to make a supplemental determination as to Ortiz's culpability for the deaths of such users, which determination, opined the court, authorized resort to the life maximum corresponding to the "resulting in death" offense under the § 841(b)(1)(C).  [Petition at 12; Appx. 14.] Ortiz was thus sentenced to life entirely on a non-quantity related basis, one wholly predicated upon resultant death of users, an element of a wholly different crime.  [Petition at 18-21; Appx.20-23]. The manner in which the judge interpreted the statute of conviction led to this resort to an aggravated crime's penalty.

Six years later, **at a time when Ortiz no longer had any available remedies for redress in the courts**, the Supreme Court handed down its statutory interpretation in *Jones v United States*, 526 U.S. 227 (1999), of a provision of the carjacking statute (18 U.S.C. § 2119) determined by the Court to have substantive

properties. That provision, the "if serious bodily injury results" provision, was pronounced by the Court as singularly determining whether one charged under the carjacking statute had actually been charged/convicted under a generic version of carjacking or, rather, a substantively distinct, aggravated version of such crime. It was announced that the character of the defendant's conviction there had been misinterpreted as being the latter when it was really the former. *Jones* at 243. Relief was granted. Id.

During its interpretive analysis of that provision, the Court articulated pronouncements that dispositively affected another statutory provision: the "if death results" provision. This very provision is the fulcrum upon which the identity of Ortiz's current conviction turns. The Supreme Court ascribed the same substantive properties to this provision and so it was that the first of three respective bases for Ortiz's audita querela petition was born.

Four years after *Jones*, this Circuit undertook in *United States* v *Promise*, 255 F.3d 150 (4th Cir. 2003)(en banc) to reinterpret § 841(b) itself. See *United States v Alvarada,* 440 F.3d 191, 199 (4th Cir. 2006)(declaring Promise to be a decision "interpreting § 841). The *Promise* Court espoused the Sixth Circuit's decision in *United States v Rebmann*, 226 F.3d 521, 524-25 (6th Cir. 2000), wherein the Sixth Circuit announced that the "resulting death" language in §

841(b) was an actual offense element of a distinct statutory offense under that section.

On the basis of *Promise*, Ortiz leveled his second statutory claim for relief in Point Two of his petition. As was the case with Ortiz's *Jones* claim, he asserted that *Promise* had undertaken a reinterpretation of the statute under which he was convicted demonstrating that he was actually convicted of a lesser offense.

With no other viable procedural mechanism to bring these statutory interpretation claims to the federal courts for redress, Ortiz invoked the "All Writs Act", 28 U.S.C. § 1651, to bring a petition for a writ of audita querela. <u>See</u> Petition at 24-26 (demonstrating the unavailability of any other avenue of collateral attack); Appx. 26-28. The district court, after affording troublingly swift consideration to Ortiz's weighty 42-page brief, issued a memorandum order 11 days after it was filed "denying" it as an impermissible attempt at filing a second § 2255 motion. [D.E. # 2, at 4]; Appx. 58].

The district court took this curious position after imputing to Ortiz an intent to ask the court to entertain claims for relief premised on the non-retroactive decision in *Apprendi v New Jersey*, 530 U.S. 466 (2000), which announced a new rule of constitutional procedure, where in unmistakable reality Ortiz had clearly presented his claims for relief as claims of statutory interpretation predicated upon 1) the Supreme Court's decision in *Jones*, see Petition at 15-24 (exclusively

7

arguing *Jones* and its impact on Ortiz's conviction); Appx. 17-26, and 2) this Circuit's decision in *Promise*, see Petition at 33-38 (exclusively arguing Promise and its impact on Ortiz's conviction); Appx. 35-40.

Absent that untenable construction of Ortiz's first two (2) Points for relief, the district court was without choice but to do 1 of the very 2 things that Ortiz asserted in his petition as due him. Either the district would acknowledge that Ortiz's claim for relief demonstrated that he was not in fact convicted of the § 841(b) offense that authorized life sentencing, as revealed by the pronouncements of the Supreme Court in its retroactively applicable decision in *Jones v United States* and this Court's decision in *Promise*; or it would find itself compelled to declare two (2) sections of the Antiterrorism Effective Death Penalty Act invalid under the Suspension Clause of Article 1 of the Constitution, insofar as it was exclusively by virtue of these provisions (i.e., §§ 2255(e) & (h)) that Ortiz's claim was ineligible for review under any post-conviction mechanism within the federal framework.

That is, Ortiz could show that he had been denied any "meaningful opportunity to demonstrate that he is being held pursuant to an erroneous application and interpretation of relevant law," in relation to the statutory interpretation claims he now presses.        [Petition, at 26 et seq. (Suspension Analysis); Appx. 28 et seq.]

8

The only way the district court could avoid this ineluctable posture wherein it would have to elect between these two ends was by ascribing a wholly different character to Ortiz's bona fide premise(s) for relief at Points One and Two. The district court did just that.

Finally, Relying upon the principles of *McClesky v Zant*, 499 U.S. 494-95, Ortiz argued in Point Three for redress pursuant to audita querela on the basis of a miscarriage of justice.  See Petition at 42-43 Appx. 44-45  In what is as close to an *Apprendi* argument as Ortiz can be deemed as having brought, he posited in Point Three that a constitutional violation of the proof standard and fact-finder misallocation caused him to be convicted of a crime for which a higher statutory maximum applied and for which a jury applying the appropriate standard would have reached a not-guilty verdict.  [Petition at 38-39; Appx. 40-41.]

Ortiz was fully cognizant of the pronounced standard for obtaining audita querela review of a claim relying upon a new constitutional rule of procedure and, accordingly, he asserted the necessary challenge to the legal sufficiency of the evidence in conjunction with a showing that his statutory maximum would have been lower but for the constitutional impropriety inhering in the proof standard under which he was convicted and the fact-finder applying that wrong standard. [Petition at 38-39; Appx. 40-41]. Despite Ortiz setting forth the prescribed criteria for obtaining merits review under audita querela of a claim predicated upon an

9

otherwise unusable new rule of criminal procedure, the district court completely ignored this claim for relief under Point Three.

Appellant Ortiz now respectfully asks this Honorable Court of Appeals to take corrective action where Appellant was legally entitled to a review on the merits as to each of the several Points he argued in the audita querela filed in the district court.

## SUMMARY OF ARGUMENT

The district court committed reversible error by denying Ortiz's audita querela petition on the premise that it wasn't actually an audita querela petition, but was instead a veiled attempt at bringing another § 2255 motion. The district court's reasoning was that Ortiz was bringing claims for relief that were cognizable under § 2255, i.e., *Apprendi* claims. Ortiz's claims, however, were clearly predicated upon the very decisions that he exclusively argued throughout his petition---the Supreme Court's decision in *Jones v United States*, where it interpreted here-relevant statutory language in a way that rendered defunct the construction of Ortiz's conviction relied upon by the sentencing court to justify life sentencing; and this Court's decision in *United States v Promise,* where it

10

reinterpreted § 841(b) to include "resulting death" as an actual offense element of a more severe offense.

As an exclusive result of the district court forcing an *Apprendi* face atop Ortiz's primary claims for relief as oppose to that of *Jones* or *Promise*, it enabled itself to dispose of the petition in a very cursory fashion without confronting the powerful merits of the claims presented. Where the district court's construction of Ortiz's claims cannot be sustained and must thus succumb under scrutiny, this Court should reverse the district court, and remand the case to the district court to hear the merits of the petition, which rests tellingly upon *Jones* and *Promise* (in Points One and Two).

Audita Querela provides for merits analysis of claims predicated upon a new constitutional rule of criminal procedure where a rigorous standard can be met: there must be a showing that 1) a conviction derived involving a constitutional violation of proof standard and/or fact-finder that 2) effected the imposition of a higher statutory maximum penalty where 3) such conviction would not have derived using the constitutionally prescribed standard of proof and fact-finder because the evidence was legally insufficient to sustain the conviction thereunder.

Ortiz perfectly met this standard for merits analysis of his claim at Point Three that his statutory maximum sentence was in excess of his actual crime of conviction, yet was denied merits review in contravention of the settled law of the

federal courts. Ortiz is entitled to a preliminary reversal with instructions for the district court to issue a ruling on this Point.

To the extent that a COA is deemed by this Court to be necessary even where (despite the district court's assertion to the contrary) Ortiz has presented a conforming audita querela petition under 28 U.S.C. § 1651, and thus not one subject to § 2255's edicts, the modest standard for COA is met where: 1) jurists of reason would assuredly agree that one sentenced to life for a crime of conviction that authorized a maximum of 20 years constitutes the denial of due process rights under the Fifth Amendment; and 2) jurists of reason would doubtlessly agree that the right to jury trial is classically denied a defendant where the trial court expressly forbids the jury from hearing proof or counterproof of on element that operates to distinguish a crime from its aggravated counterpart (the former being a 20-year offense, the latter life), but proceeds to impose the life penalty after the jury returns verdict on the lesser tried offense.

ARGUMENT

**I**

**THE DISTRICT COURT'S DENIAL OF ORTIZ'S CONFORMING AUDITA QUERELA PETITION, WHEREBY IT REFUSED TO HEAR THE MERITS OF ORTIZ'S STATUTORY INTERPRETATION CLAIM, CONSTITUTES REVERSIBLE ERROR, WHERE THE DENIAL EXISTS AS THE SOLE PRODUCT OF A CLEARLY ERRONEOUS LEGAL CONCLUSION: *THAT ORTIZ'S STATUTORY INTERPRETATION CLAIMS WERE COGNIZABLE UNDER § 2255 AS APPRENDI CLAIMS, SO AS TO PRECLUDE INVOCATION OF AUDITA QUERELA, DESPITE THAT THE***

12

### *CLEAR THRUST OF ORTIZ'S PREMISES FOR RELIEF UNDER AUDITA QUERELA WAS THAT JONES V U.S. AND U.S V PROMISE INTERPOSED CLARIFYING STATUTORY INTERPRETATIONS*

A critical distinction in this petition is that Points One and Two of Petitioner's brief requested relief under the new statutory interpretation announced in *Jones v United States*, 526 U.S. 227 (1999) and United States v Promise, 255 F.3d 150 (4th Cir. 2003)(en banc), respectively, and do not invoke *Apprendi* in any way whatsoever. However, Point Three of the petition does assert that petitioner is *ALSO* and independently entitled to relief under *Apprendi* because it announced a new rule of criminal procedure based on a Constitutional pronouncement as discussed below in Point III *Supra*. The district Court's critical error was to misinterpret Petitioner's statutory interpretation arguments based on *Jones* as actually based on *Apprendi*, and subsequently failing to address Petitioner's actual *Apprendi* argument in Point Three as an Audita Querela argument based on a new rule of criminal procedure. The distinctions are drawn quite clearly in Petitioner's original brief, and to the extent possible, further clarified below.

### A.    Standard of Review

Whether or not [a] motion is 'second or successive' within the meaning of § 2255 is ... an issue that [this Court] review[s] de novo. *United States v McDonald*, 641 F.3d 596, 609 (4th Cir. 2010), citing *Lang v. United States*, 474 F.3d 348, 351 (6th Cir.2007). Where a district court has "denied" a petition for writ of audita

querela, appellate courts undertake de novo review. See *United States v Richter*, 510 F.3d 103, 104 (2d Cir. 2007); *United States v Gamboa*, 608 F.3d 492, 494 (9th Cir. 2010); *United States v. Holt*, 417 F.3d 1172, 1174 (11th Cir.2005).

**B.    Discussion**

1.    <u>The Claim Comprising "Point One" of Ortiz's Audita Querela</u>

The Supreme Court did not decide *Jones v United States*, 526 U.S. 227, until 1999. Ortiz below relied explicitly upon the *Jones* Court's statutory interpretation of language Congress used in the carjacking statute as the animating predicate for his claim at Point One of his petition that his conviction is actually for a crime different than his judgment reflects.  See Petition at 18-21; Appx. 20-23. Ortiz did not purport in any way, shape or form purport to be invoking the aegis of *Apprendi v New Jersey* for his proposition that "[t]he development in the law <u>*as wrought by Jones*</u> has made the defect in his judgment discernible where it was not before."[2] Petition at 21; Appx. 23 (emphasis added).

 That notwithstanding, the district court held that, "[a]lthough the petitioner states his claim is based on *Jones* …, he is in effect predicating his claims on [the] Supreme Court decision[] in *Apprendi v New Jersey* [] (holding '[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proven beyond a

_____

[2] See Note 4, supra.

reasonable doubt) ….." Memorandum Opinion (D.E. # 2), at 2 n. 1; Appx. 56, n. 1. Ortiz has nowhere in his petition argued that it was *Apprendi* that interpreted the statutory language giving rise to his claim that his conviction has long been prejudicially misconstrued.[3]

How the district court derived this dubious notion that it was *Apprendi* as opposed to the explicitly stated Jones pursuant to which Ortiz was claiming relief amid his statutory interpretation claim is mystifying. What is easier to comprehend, however, is that such a conclusion would allow for a disposition of this matter that did not require the complex analyses compelled by Ortiz's Jones and Suspension arguments. See Petition, at Points 1.B and 1.D, respectively; Appx. 19-26 and 28-34.

The difference between *Jones* and *Apprendi* in terms of what type of decisions they are is dispositive to this appeal so far as Point One is concerned. Contrary to the district court's assertion that *Jones* is *not* retroactive (D.E. # 2, p. 2, n. 1; Appx. 56), it is well settled that Jones is a "substantive" decision with retroactive application, in that it interprets a federal statute. See *Davis v. United States*, 417 U.S. 333, 342 (1974); In contrast, *Apprendi* interposed a new rule of constitutional procedure and is thus eligible only for prospective application. See *United States v Sanders*, 247 F.3d 139, 147 (4th Cir. 2001).

---

[3] See Note 4, supra.

To properly invoke this extraordinary writ for purposes of Point One, Ortiz was required to demonstrate in the district court only two things: 1) that a legal development occasioned subsequent to his conviction revealed a fundamental defect in his judgment, see *United States v Holder*, 936 F.3d 1, 5 (1st Cir 1991), and 2) that the defect is not redressable pursuant to any other post-conviction remedy. Id. at 3. On account of *Jones*, Ortiz was able to accomplish this conclusively. See Petition at 15-26; Appx. 17-28.

Ortiz asserted that the actual nature of his conviction had long been misinterpreted; that the misinterpretation was the foundation of the current unlawful judgment pursuant to which he is imprisoned; and that the Supreme Court's statutory interpretation handed down in *Jones* substantively clarified the true nature of his conviction in revelation of the fact that the attendant penalty he incurred corresponded to a more severe offense of which he was not convicted. Petition at 15-24 Appx. 17-26.

The district court somehow read this as asserting a gripe with the proof standard and fact-finder involved in the determination of the "resulting death" element under 21 U.S.C. § 841(b)(1)(C), which element is determinative of whether one is convicted of drug trafficking (authorizing a maximum of 20 years) or, differently and more severe, drug trafficking ***resulting in death*** (authorizing a maximum of life). See Petition at 18; Appx. 20 (citing, inter alia, United States v

16

*Rebmann*, 226 F.3d 521, 524-25 (6th Cir. 2001)(declaring resulting death to be an actual offense element under § 841(b))). Ortiz explicitly argued that he has never been charged with, let alone convicted of, that element (resulting death) whatsoever, and thus the district court's characterization of him as lamenting proof standard or fact-finder in Point One is without any support.

In fact, were that construction of what Ortiz was positing accurate, an inherent conflict would be starkly present in Point One. For Ortiz made clear in his argument below that he has been charged with a wholly different offense under § 841(b), one which does not have as an element "resulting death", and one which does not authorize a penalty of life imprisonment. See Petition at 19-21 Appx. 21-23. Why, then, would he be asserting that that particular element <u>was</u> proven, albeit wrongly? To be clear, he did not.

It was by virtue of this critical error in the construction of Ortiz's statutory interpretation claim that the district court was able to determine that the primary claim for relief could have been brought in a § 2255 motion; that is, because it was no more than an *Apprendi* claim. But for that untenable conclusion, the court would have been forced to acknowledge that no other avenue of collateral attack was available to provide for review of Ortiz's statutory interpretation claim. See *United States v Richter*, 510 F.3d 103, 104 (2d. Cir. 2007)(holding that the writ is

available where "the absence of any other avenue of collateral attack would raise serious constitutional questions about the laws limited those avenues").

Just to be sure, where *Jones* interpreted language in the carjacking statute (i.e., "the serious bodily injury" language), it presented occasion for the Court to also render substantive pronouncements about the "if death results" language in the statutory scheme under which Ortiz is convicted. See *Jones*, 526 U.S. at 243. The impact on Ortiz's conviction was identical to the impact that those interpretative pronouncements had on the conviction in Jones. That impact: conclusively establishing as a matter of law that the conviction was actually for the non-aggravated variant under the statute and not the aggravated variant reflected in the hence-defunct judgment.

On the other hand, *Apprendi* interpreted no statutory language at all.

It is clear that the district court erred in determining that Ortiz was asserting an *Apprendi* issue at Point One of his petition.[4] That error culminated in the court making its dispositive legal conclusion here that Ortiz was precluded from audita querela review because *Apprendi* claims were decidedly within the purview of claims required to be brought under § 2255. But for the procedural error in its analysis of Ortiz's petition as to Point One, where it proceeded to disposition on

---

[4] To the extent that Ortiz does in fact predicate his claim at Point Three of his petition on *Apprendi*, he is still on solid legal ground to obtain merits review, as he argued there under the rubric of a fundamental miscarriage of justice. See Petition at 38-43; Appx. 40-45.

18

the flawed conclusion that Ortiz's statutory interpretation claim was really an *Apprendi* claim[5], the district court would have assuredly found that Ortiz was duly entitled to audita querela review and relief on the merits of Point One.

Moreover, acknowledging that the claim presented was in fact a veritable Jones claim would have assured, at bare minimum, that the district court confront Ortiz's fully briefed Suspension Clause argument under Point One (Part C), which solicited the court for a ruling on whether subsections (e) and (h) of § 2255 ran afoul of the non-suspension prohibition of Article 1 of the Constitution, insomuch as they precluded review under any and all federal post-conviction mechanisms. See Petition at 26-32; Appx. 28-34

### 2.    Point Two of Ortiz's Petition

In Point Two of Ortiz petition (Appx. 35-40), Ortiz invoked this Circuit's decision in *United States v Promise*, 255 F.3d 150 (4th Cir. 2003)(en banc), to illustrate by way of the reinterpretation of § 841(b) handed down there that his conviction was for a crime other than the one he was sentenced for. The Promise Court espoused the Sixth Circuit's decision in *United States v Rebmann*, 226 F.3d 521, 524-25 (6th Cir. 2000), wherein the Sixth Circuit announced that the "resulting death" language in § 841(b) was an actual offense element of a distinct

---

[5] See Note 4, infra.

statutory offense under that section. See *United States v Alvarada*, 440 F.3d 191, 199 (4th Cir. 2006)(declaring *Promise* to be a decision "interpreting § 841").

Prior to *Promise*, the law in the Fourth Circuit at the time that Ortiz was sentenced was committed to an interpretation of the statute that omitted from the list of defining elements under subsection (b)(1)(C) the factor of resulting death. See *United States v Patterson*, 38 F.3d 139, 143 (4th Cir. 1994). That interpretation has since been supplanted by *Promise*. Yes, *Promise* vitiates an erroneous construction of the statute under which Ortiz stands sentenced such that reveals that he was actually convicted only of the basic offense under § 841(b)(1)(C), which is subject to a maximum of 20 years, as opposed to the aggravated variant involving resultant death which carries a maximum of life. See *United States v Brown*, 232 F.3d 399, 403 (4th Cir. 2003)(holding that a sentence which exceeds the statutory maximum for the offense of conviction constitutes a miscarriage of justice).

A "judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction," *Rivers v Roadway Express*, 511 U.S. 298, 312 (1994). That said, the only question that district court had to resolve in order to determine whether this claim was entitled to review and redress under audita querela—seeing as how no

retroactivity issue stood as an impediment to this statutory interpretation claim—was whether any other collateral mechanism provided for relief.

Ortiz answered that question dispositively in the negative at Point One of his petition [Appx. 26-28]. Ortiz demonstrated that neither §§ 2255, 2244 nor 2241 supplied a legally befitting forum for the presentation of such a claim where the interpretation was handed down 1) subsequent to the time for his initial § 2255 and where 2) it did not negate in toto his guilt under all offenses under § 841(b).

The district court was wrong then to deny Ortiz a merits analysis as to Point Two, particularly where he clearly demonstrated that his situation qualifies as a miscarriage of justice so as to always require review.  See Petition at 34-35; Appx. 36-37. In light of the words used, argument presented, and cases cited in furtherance of the relief request at Point Two, the district court's reliance on its conclusion that Ortiz was arguing an *Apprendi* claim to justify a procedural disposition was with no merit address is plainly unsustainable.

## II

**THE DISTRICT COURT'S TOTAL DISREGARD OF THE MISCARRIAGE OF JUSTICE CLAIM FOR RELIEF AT POINT THREE OF ORTIZ'S PETITION MANDATES REVERSAL FOR THE DISTRCT COURT TO ADDRESS THE ISSUE BEFORE APPELLATE REVIEW CAN TRANSPIRE**

### A.    Standard of Review

Where a district court fails to adequately discuss an issue presented to it by a litigant, "[this Court will] reverse the decision of the district court and remand the case for further proceedings." *Whittle v. Timesavers*, *Inc*., 749 F.2d 1103, 1106 (4th Cir.1984). However, in that same instance, this Court enjoys the discretion to conduct a de novo review of the issue. *Patel v Napolitano*, 706 F.3d 370, 372 (4th Cir. 2013).

**B.    Discussion**

3.    Point Three of Ortiz's Petition

Insofar as the district court's position on claims relying upon the new procedural rule announced in *Apprendi* is that they are per se ineligible for redress under any collateral mechanism aside from § 2255, the court is demonstrable wrong in light of the argument at Point Three of Ortiz petition. The court is also wrong to conclude that *Apprendi* has no utility on collateral review since the Supreme Court did not announce it to be retroactive. See Memorandum Opinion, at 2, n. 1; Appx. 56, n. 1.

The district Court completely disregarded Ortiz's claim at Point Three. This Court will remand where a district court fails to address a properly presented claim stating a miscarriage of justice, requiring the lower court to issue a ruling in the first instance so that the record on appeal is sufficient to permit review of such a claim. See *Wolfe v Johnson*, 565 F.3d 140, 164 (4th Cir. 2009)(citing *Clisby v.*

*Jones*, 960 F.2d 925, 936 (11th Cir.1992) (en banc) (instructing district courts to resolve all claims presented in a collateral attack petition).

In *Trenkler v United States*, 536 F.3d 85 (1st Cir. 2008), the First Circuit issued an extensive exposition on the writ of audita querela. Of prime relevance here, the Court assured of the writ's availability in instances where a petitioner can show that the application of a rule of criminal procedure that has since been superseded on constitutional grounds led to the imposition of a higher statutory maximum than the one applicable to his offense of conviction. Id. at 99; see Petition at 40 et seq. According to the Supreme Court, such a circumstance qualifies as a "miscarriage of justice", for which redress will ALWAYS remain available irrespective of any procedural doctrines of retroactivity. See *McClesky v Zant*, 499 U.S. at 494-95 (1991); *Murray v Carrier*, 477 U.S. 478 (1986).

Ortiz argued in Point Three that, in light of the clarification of his actual offense of conviction by virtue of *Jones* and *Promise* (Points One and Two), the new constitutional rule applicable to proof standard and fact-finder of statutory-maximum-determining factors would have forestalled him from being sentenced on the basis of an aggravated offense (drug trafficking **resulting in death**) that he was actually not guilty of.  Petition at 38-39; Appx. 40-41.  Because the result was that he was penalized pursuant to higher statutory maximum, one which would not have been imposed had the new rule of criminal procedure been applied in his

case, Ortiz was entitled to the review prescribed by the Supreme Court reserved for "miscarriages of justice." See *Trenkler* at 99.

The *Trenkler* Court explained that, in order for a petitioner to establish a miscarriage of justice (and thus be eligible for audita review) on the basis of a court imposing an inappropriately higher statutory maximum, where the engagement of a new rule of procedure is essential to facilitate this showing he must also be 1) challenging the sufficiency of evidence on which the judge acted and 2) capable of showing that a jury would have reached a different result on the factor underlying that higher statutory maximum. Ibid. Ortiz did precisely these things in Point Three. See Petition at 38-43; Appx. 40-45.

The "evidence" offered by the government in furtherance of establishing that users died as a result of narcotics attributable to Ortiz was demonstrably equivocal at best. Petition at 40-42; Appx. 42-44. And because where evidence "is essentially in balance, a jury must entertain reasonable doubt," see *Kamiensi v Hendrics*, 323 Fed. Appx. 740, 750-751 (3d Cir. 2009)(unpublished), the requirement that a petitioner show that a jury would have reached a different result was satisfied. Ortiz should have thus received not only a merits analysis under the miscarriage of justice exception that negates all assertions of procedural default, but should have in fact received relief.

24

Without a determination that the drugs attributable to Ortiz was a but for cause of the deaths underlying the judgment presently in place against him, he would not now be sentenced pursuant to § 841(b)(1)(C)'s aggravated offense of drug trafficking resulting in death. The fact that he is is exclusively attributable to the constitutionally repugnant procedure invalidated and superseded by the Supreme Court in *Apprendi v New Jersey*.  See *McClesky* at 494-495 (miscarriage of justice realized where constitutional violation has probably resulted in conviction of one innocent of a crime).

So to the extent that *Apprendi* was engaged by Ortiz anywhere in his petition as a component of his claims for relief, it was in Point Three and Point Three only. Even still, he respectfully urges that his claim was entitled to review as demonstrated above.

Because the district court completely disregarded Point Three altogether, this Court should remand it back to the district court for disposition so that appellate review can transpire.

## III

## A CERTIFICATE OF APPEALABILITY IS NOT NEEDED FOR THIS COURT TO UNDERTAKE APPELLATE REVIEW OF THE DISTRICT COURT'S FINAL ORDER DISPOSING OF ORTIZ'S AUDITA QUERELA PETITION

This Court has not squarely addressed whether it will require a petitioner who files a conforming audita querela petition to obtain a Certificate of Appealability as a prerequisite to appealing the denial of such petition. The Fifth Circuit has addressed this precise question, deciding—as is this Court being asked here to expressly decide—that a COA is not required for an appellate court to exercise jurisdiction over such an appeal. See *United States v. Cornett*, 350 Fed. Appx. 849, 850 (5th Cir. 2009)(unpublished).

The COA statute, 28 U.S.C. 2253(c), requires a litigant desiring to take an appeal from the denial of a § 2255 motion to first obtain a COA before the order disposing of that motion becomes appealable. *Harris v Johnson, 52* Fed. Appx. 838 (4th Cir. 2009)(unpublished); § 2253(c)(1). That requirement was not legislated to apply to any and all forms of post-conviction initiatives, but only to those in the nature of § 2255 initiatives. See, e.g., *Drax v Reno*, 338 F.3d 98, 106 (2d Cir. 2003)("the § 2253(c) requirement does not apply to federal habeas proceedings, such as the instant one, brought pursuant to 28 U.S.C. § 2241.")(citing *Murphy v. United States*, 199 F.3d 599, 601 n. 2 (2d Cir.1999) (collecting cases)). While that holding came to be in the context of a § 2241 habeas corpus proceeding, the principle is clear: the COA requirement has limited application and is not all encompassing.

The answer to whether a COA is needed in this particular case in order to make the district court's order of denial appealable requires a preliminary determination of whether Ortiz presented a conforming audita querela petition, as opposed to an ostensible one. Ortiz respectfully asserts that his analysis of that issue in this brief conclusively settles that matter in his favor.

Where but for the district court's misidentification of the underlying petition there would be no question of whether a COA is needed for this appeal, this Court should proceed to exercise its jurisdiction as is appropriate where an appeal from an audita querela's denial is before it. For that is precisely the case here.

## IV

## JURISTS OF REASON WOULD DEBATE WHETHER THE DISTRICT COURT'S PROCEDURAL RULING, WHEREBY IT DISPOSED OF ORTIZ'S AUDITA QUERELA PETITION PURSUANT TO THE PROTOCOL PRESCRIBED FOR SUCCESSIVE § 2255 MOTIONS, WAS CORRECT

The COA standard has been characterized as a "modest" one. *Medellin v. Dretke*, 544 U.S. 660, 681 (2005); *Lambright v Stewart*, 220 F.3d 1022, 1024 (9th Cir. 2000). "[T]he purpose of the COA requirement is to enable the courts of appeals to winnow out frivolous appeals in habeas cases. *Reid v. Angelone*, 369

F.3d 363, 369 (4th Cir. 2004)(citing *Barefoot v. Estelle*, 463 U.S. 880, 892–93 (1983) (explaining the purpose of the pre-AEDPA CPC requirement)).

To the extent that this Court should find that a coa is required to appeal from the denial of an audita querela petition, your appellant submits his postulance for such a certificate in an abundance of caution an respect.

### A.    Standard

"When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue if the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000). The petitioner must make a "substantial showing" of the denial of a constitutional right.

The Court in *Slack* reasoned that "[a] petitioner makes a 'substantial showing' when he demonstrates that his petition involves issues which are debatable among jurists of reason, that another court could resolve the issues differently, or that the issues are adequate to deserve encouragement to proceed further." All of the issues below meet this modest standard.

28

### B.     Issues for Certification

#### 1.     <u>Audita Querela v Successive § 2255 Motion</u>

The district court's procedural ruling rests entirely on its conclusion that Ortiz's petition was not an audita querela petition, but was rather an impermissible successive § 2255 petition. Based on the analysis of that issue as laid out in Issue I ante, Ortiz contends that jurists of reason would at least debate the propriety *sans non* of that conclusion-based ruling. It seems a foregone conclusion based upon the circumstances here that the retroactive nature of Jones, supra, and its substantive character that this issue is definitely deserving of encouragement to proceed further.

#### 2.     <u>Ortiz was denied his due process rights guaranteed by the Fifth Amendment to be sentenced within the statutory maximum applicable to the offense for which he was charged and convicted when he was sentenced to life imprisonment on the basis of an indicted offense authorizing imposition of a maximum penalty of 20 years.</u>

Ortiz has laid out the facts and legal analysis demonstrating that he was sentenced to life on a charge and conviction corresponding to a congressionally authorized maximum penalty of 20 years. Ortiz has made the necessary substantial showing. For jurists of reason would likely be unanimous in their agreement of the fact that this is classically a violation of the Fifth Amendment due process guarantee. This issue definitely deserves encouragement to proceed further.

   3.   <u>Ortiz was denied his Sixth Amendment to a jury trial on the charge of Conspiracy to traffic in heroin and fentanyl resulting in death where the district court expressly enjoined a trial on the central element of this crime but proceeded at the close of trial to take further evidence on that element and return a verdict of guilt as to same</u>

Ortiz has gone to great lengths to illustrate how the evidence going to the element of user death was legally insufficient and how a conviction on the aggravated drug trafficking offense codified under § 841(b)(1)(C) would have thus been impossible. Accordingly, had the jury been presented with this issue, its acquittal would have operated to protect Ortiz from the imposition of the life sentence, as any authorization to impose that sentence would have been manifestly understood to have been denied.

The district court, as demonstrated in Ortiz's Petition at 10, expressly forbid any trial on the user death element. This element operates as the determinant of whether the drug crime is a 20-year offense or the aggravated death-resulting variant carrying life imprisonment.  Petition at 17 et seq.; Appx. 19. This situation is the quintessence of a "denial" of the right to jury trial, where the trial court explicitly forbade trial of this central, aggravating element.

## CONCLUSION

For the foregoing reasons and analyses, this Honorable Court should remand this matter to the district court for a merits analysis of the three distinct Points argued in Ortiz's audita querela petition.

30

## STATEMENT REGARDING ORAL ARGUMENT

Counsel respectfully submits that oral argument in this important case should be afforded, as the decisional process stands to be materially aided by a verbal delivery and discourse as to the very rare circumstances of this case. This appeals genuinely brings up for review a real audita querela petition and counsel believes that the opportunity for this Honorable Court to edify our body of jurisprudence as it informs the question of the writ's continued viability is ideally presented on this occasion.

## CERTIFICATE OF COMPLIANCE

I hereby certify that Appellant's brief complies with the type-volume limitation set forth in Rule 32(a)(7)(B),  F.R.A.P., as  it contains only 7,687 words according to the word count of the Microsoft Word 2010.

<u>**/s/ William Norman**</u>
William B. Norman, Esq.
Bar. #0088113
Norman & Tayeh, LLC.
795 Sharon Drive
Westlake, Ohio 44154
-  Counsel for Carlos Ortiz   -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 25th day of October, 2013 copy of the foregoing Opening brief for was filed electronically Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's system.

<u>/s/ William Norman</u>
William B. Norman, Esq.
Bar. #0088113
Norman & Tayeh, LLC.
795 Sharon Drive
Westlake, Ohio 44154
- Counsel for Carlos Ortiz  -