RECORD NO. 13-6447

In The

# United States Court Of Appeals
## For The Fourth Circuit

# CARLOS ORTIZ,

*Petitioner - Appellant,*

v.

# UNITED STATES OF AMERICA,

*Respondent – Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT FOR THE DISTRICT OF MARYLAND
AT BALTIMORE

————————

**JOINT APPENDIX**

————————

| | |
|---|---|
| **William B. Norman**<br>NORMAN & TAYEH<br>**795 Sharon Drive**<br>**Suite 206**<br>**Westlake, OH 44145**<br>**(440) 580-0365** | **Mara Z. Greenberg**<br>**Sujit Raman**<br>OFFICE OF THE<br> UNITED STATES ATTORNEY<br>**6500 Cherrywood Lane**<br>**Suite 200**<br>**Greenbelt, MD 20770**<br>**(301) 344-4433** |
| *Counsel for Appellant* | *Counsel for Appellee* |

# TABLE OF CONTENTS

Page:

Docket Entries ............................................................. 1

Petition for Writ of Audita Querela,
With Exhibits,
     filed March 2, 2012 ........................................... 3

**Exhibits:**

    A.   Letter from
        The Honorable Frederic Smalkin to Counsel
        Re: Government's Intentions of
        Introducing Relevant Evidence at Trial
            dated October 20, 1992 ........................... 47

    B.   Letter from
        The Honorable Frederic Smalkin to Richard Bennett
        Re: Response to October 30, 2012 Letter
            dated November 2, 1992 ......................... 49

    C.   Letter from
        The Honorable Frederic Smalkin to Counsel
        Re: Review of the Government's
        Sentencing Memorandum
            dated April 22, 1993 ............................ 51

    D.   Letter from
        The Honorable Frederic Smalkin to Harvey Greenberg
        Re: Response to June 4, 1993 Letter
            dated June 7, 1993 ................................ 53

Memorandum of
The Honorable William Quarles, Jr.
Denying Petition for Writ of Audita Querela and Closing Case
    filed March 13, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

Order of
The Honorable William Quarles, Jr.
Denying Petition for Writ of Audita Querela and
Certificate of Appealability and Closing Case
    filed March 13, 2012 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

Petitioner's Motion to Vacate Order Premised on
Clear Error of Law Pursuant to Rule 59(e), Fed. R. Civ. P.
    filed April 16, 2012 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

Order of
The Honorable William Quarles, Jr.
Denying Petitioner's Motion to Vacate Order
    filed January 10, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 73

Petitioner's Notice of Appeal
    filed March 21, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 75

Appearance of Counsel Form
    filed July 11, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 76

Order
Granting Counsel to Proceed In Forma Pauperis
    filed October 4, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 77

APPEAL,CLOSED,HABEAS,PROSE

# U.S. District Court
## District of Maryland (Baltimore)
## CIVIL DOCKET FOR CASE #: 1:12-cv-00689-WDQ

Ortiz v. United States of America        Date Filed: 03/02/2012
Assigned to: Judge William D Quarles, Jr      Date Terminated: 03/13/2012
Case in other court: Fourth Circuit Court of Appeals, 13-06447   Jury Demand: None
Cause: 28:2241 Petition for Writ of Habeas Corpus (federa   Nature of Suit: 540 Mandamus & Other
                                                         Jurisdiction: Federal Question

**Petitioner**

**Carlos Ortiz**             represented by   **Carlos Ortiz**
                                             #28906-037
                                             U.S.P. Canaan
                                             P.O. Box 300
                                             Waymart, PA 18472
                                             PRO SE

V.

**Respondent**

**United States of America**

| Date Filed | # | Docket Text |
|---|---|---|
| 03/02/2012 | 1 | PETITION for Writ of Habeas Corpus filed by Carlos Ortiz. (Attachments: # 1 envelope)(amf, Deputy Clerk) (Entered: 03/05/2012) |
| 03/13/2012 | 2 | MEMORANDUM. Signed by Judge William D Quarles, Jr on 3/13/12. (c/m af 3/14/12)(amf, Deputy Clerk) (Entered: 03/14/2012) |
| 03/13/2012 | 3 | ORDER denying Plaintiff's Petition for Writ of Audita Querela; denying Certificate of Appealability and closing the case. Signed by Judge William D Quarles, Jr on 3/13/12. (c/m af 3/14/12)(amf, Deputy Clerk) (Entered: 03/14/2012) |
| 04/16/2012 | 4 | MOTION to Vacate Order Premised on Clear Error of Law Pursuant to Rule 59(e), Fed.R.Civ.Pr. by Carlos Ortiz (amf, Deputy Clerk) (Entered: 04/16/2012) |
| 01/10/2013 | 5 | ORDER denying 4 Petitioner's Motion to Vacate Order Premised on Clear Error of Law Pursuant to Rule 59(e) Fed.R.Criv.Pr. Signed by Judge William D Quarles, Jr on 1/10/13.(c/m af 1/10/13) (amf, Deputy Clerk) (Entered: 01/10/2013) |
| 03/21/2013 | 6 | NOTICE OF APPEAL as to 3 Order, 5 Order on Motion to Vacate by Carlos Ortiz. (Attachments: # 1 envelope)(bmhs, Deputy Clerk) (Entered: 03/22/2013) |

**-1-**

| 03/22/2013 | 7 | Transmission of Notice of Appeal and Docket Sheet to US Court of Appeals re 6 Notice of Appeal. IMPORTANT NOTICE: To access forms which you are required to file with the United States Court of Appeals for the Fourth Circuit please go to http://www.ca4.uscourts.gov and click on Forms & Notices. (bmhs, Deputy Clerk) (Entered: 03/22/2013) |
| 03/22/2013 | | Assembled Electronic Record Transmitted to Fourth Circuit -- Initial (bmhs, Deputy Clerk) (Entered: 03/22/2013) |
| 03/22/2013 | 8 | USCA Case Number 13-6447 for 6 Notice of Appeal filed by Carlos Ortiz. Case Manager - Barbara H. Rowe (bmhs, Deputy Clerk) (Entered: 03/25/2013) |
| 10/04/2013 | 9 | ORDER of USCA granting leave to proceed in forma pauperis as to 6 Notice of Appeal filed by Carlos Ortiz (bmhs, Deputy Clerk) (Entered: 10/04/2013) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 10/23/2013 10:29:03 | | |
| **PACER Login:** | tm1162 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:12-cv-00689-WDQ |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

**-2-**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
BALTIMORE DIVISION

CARLOS ORTIZ,

                Petitioner,

        v.                                    Criminal No. 92-cr-301 (WDQ)

UNITED STATES OF AMERICA,

                Respondent.

_____

PETITION FOR WRIT OF AUDITA QUERELA
_____

     Carlos Ortiz brings this instant request for relief in the

form of a petition for the issuance of a writ of audita querela,

relying upon the power conferred on this Court by act of Congress

as codified at 28 U.S.C. § 1651, the "All Writs Act," to enable it

to both entertain this request and to redress the manifest error

inhering in Ortiz's conviction and sentence by issuing said writ.

     As it stands, if this Court declines to exercise the authority

that it (as demonstrated herein) unquestionably enjoys to redress

the salient impropriety in Ortiz's current judgment of conviction

and sentence, he will spend the remainder of his natural life in

prison whereas Congress authorized only 20 years' imprisonment as

the maximum pains he could be held to endure for the offense he

has been adjudged guilty of.  He has near completed those 20 years,

but owing to a fundamental misconstruction of the statute under

which he was convicted at the time that this matter came on in

this Court for sentencing, this Court construed his conviction as

one eligible for a sentence of life imprisonment, and hence imposed

same.

-3-

Accordingly, despite his having served almost the maximum allowable term of imprisonment for the offense that the judgment of conviction of this Court certifies Ortiz's guilt on, Petitioner Carlos Ortiz will even after completion of that maximum term remain forever imprisoned unless this Court of Laws declares the true character of his offense of conviction and issues a writ of audita querela excising any portion of that current sentence not authorized by that conviction.

## INTRODUCTION

Resolution of this petition for the admittedly seldom-warranted writ of audita querela turns on the determination of what precise offense the judgment pursuant to which Ortiz stands presently imprisoned actually certifies his guilt on—that is, as a matter of law. As urged by your Petitioner, performing this determination involves a rather straightforward application of controlling Circuit precedent interpreting the drug trafficking statute under which he was convicted, 21 U.S.C. § 841(a), (b)(1)(C); to thereby derive the inescapable conclusion that a since-refined construction of that statute has had the effect of illuminating his actual offense of conviction as being that of merely "Conspiracy to Traffick in Fentanyl (sans resulting death)," to be distinguished from "Conspiracy to Traffick in Fentanyl Resulting in Death."

The statutory maximum for the former offense is 20 years; for the latter it is life. Ortiz's current judgment of sentence is a product of this Court's construction of his conviction as constituting the latter. That construction is legally invalid.

So to the extent that the since-abrogated construction of the

2

statute was embraced by this Court in sentencing Ortiz such that
led to imposition of the maximum penalty corresponding to the
offense of Drug Trafficking Resulting in Death, i.e., life impri-
sonment, where that sentence exceeded and continues to exceed the
statutory maximum applicable to the only offense of conviction
that could legally have derived against him according to the
Fourth Circuit's en banc decision in United States v. Promise,
255 F.3d 150 (4th Cir. 2001)(en banc), Ortiz is entitled to a
declaratory judgment of this Court declaring the offense to which
the criminal judgment against him in this matter corresponds as
"Conspiracy to Traffick in Fentanyl Sans Resulting Death."

By virtue of such declaration, Ortiz's deservedness of a writ
of audita querela correcting what is now a life sentence that
exceeds the statutorily authorized maximum of 20 years for his
actual offense of conviction will become clear.

Alternatively, and to the extent that this Court should hold
that Promise alone did not explicitly enough declare the resulting-
death provision of § 841(b)(1)(C) an offense element thereof, the
writ should issue of this Court to Ortiz by virtue of the advent
of the Supreme Court's decision giving such provision element
status as declared in Jones v. United States, 526 U.S. 227 (1999).
For the declaration of the High Court there that resulting death
was a statutory element of the federal carjacking statute by
necessary implication declared likewise about the largely identical
death-resulting provision in the substantively indistinguishable
federal drug trafficking statute at-issue here.

The respective merits of the above propositions relying upon

3

the Fourth Circuit's Promise decision and the Supreme Court's
Jones decision notwithstanding, the cumulative import of the deci-
sions and the principles upon which they derived provide Ortiz
with the rare ability to establish his current plight as one of a
miscarriage of justice, and in more than one respect as will be
demonstrated infra.  For one, but for the misallocation of fact-
finder and proof standard which transpired in this Court respecting
the determination of Ortiz's guilt on the question of whether death
resulted from the use of drugs attributable to him, any jury hearing
the equivocal and demonstratedly inconclusive evidence offered on
the point would near-doubtlessly have expressed its reasonable
doubt by returning a not-guilty verdict in that respect.  Such a
situation has been indicated to represent a miscarriage of justice.
See Trenkler v. United States, 536 F.3d 85, 99 (1st Cir. 2008).

In other words, constitutional violation has probably caused
Ortiz to be held culpable for the deaths at-issue here where he
was innocent of same.  McClesky v. Zant, 499 U.S. 467 (1991).

### I.  CASE HISTORY

#### A.   Charges

Carlos Ortiz along with 11 others were charged by way of a
superseding indictment returned by a grand jury sitting in the
District of Maryland on August 11, 1992, with conspiracy to distri-
bute and possess with the intent to distribute fentanyl and heroin,
in violation of 21 U.S.C. §§ 846 and 841(a).  Indictment (count 1),
D.E. # 1.

In addition to the conspiracy count, Ortiz was also named in
2 substantive counts of possession with intent to distribute

4

fentanyl and heroin in violation of 21 U.S.C. § 841(a), id. (counts
3 and 4, respectively), and 1 count of engaging in a continuing
criminal enterprise in violation of § 848(a), id. (count 7).

B.    Trial

By the time of trial, which commenced and proceeded from
January 19, 1993, through February 25, 1993, only 8 out of the 11
defendants indicted along with Ortiz remained poised for trial.
(2 had been removed to state court and another had opted for a
plea of guilty.)

The jury was charged on March 1, 1993, and thereafter deli-
berated Ortiz's guilt or innocence until March 5, at which time
it rendered its verdict: guilty as to the conspiracy count (count
1) and the substantive count of possession with intent to distri-
bute heroin (count 4); unable to reach a verdict as to the sub-
stantive count of possession with intent to distribute fentanyl
(count 3) or the continuing criminal enterprise charge (count 7).

Ortiz, then, was convicted of 2 of the 4 charges levied
against him.  See D.E. # 318.

C.    Sentencing

On May 17, 1993, continuing through May 18, an evidentiary
hearing occasioned in this Court concerned with the taking of
evidence about the origin of the drugs taken by some 30 persons
whom died from drug toxicity throughout various counties in Mary-
land, as well as the precise cause and nature of these persons'
deaths.  D.E. # 368.  (These proofs were to determine the appro-
priateness of sentencing Ortiz for the deaths of these persons,
see D.E. # 358.)

Per specific directive of the Court to the Probation Depart-
ment, said department was to refrain from any drug quantity deter-
minations in the discharge of its sentencing investigation duties.
See Hearing Regarding Application of Sentencing Factors (May 18,
1993), at 296-97. (The centrality of the aforementioned deaths to
the ultimate sentence, held the Court, obviated any need to deter-
mine anything with regard to sentencing provisions driven by
quantity, ibid.)

On June 14, 1993, this Court imposed a sentence of life impri-
sonment upon Ortiz on the principal count, conspiracy (count 1), to
run concurrently with a 40-year sentence imposed on the substantive
possession with intent count (count 4). Judgment D.E. # 393.
(Based on the Court's no-quantity directive, these sentences were
imposed upon 21 U.S.C. § 841(a)-(b)(1)(C) offenses, which provision
authorizes a 20-year maximum term of imprisonment for unquantified
drug offenses.) Further imposed was a 5-year term of supervised
release, and on motion of the government the 2 counts which the
jury was unable to reach verdict on, counts 3 and 7, were dismissed.
D.E. # 393.

**D.     Appeal**

Ortiz timely appealed his conviction and sentence to the
Fourth Circuit Court of Appeals, contending variously that: the
evidence admitted against him as obtained through wire intercepts
was derived via illegitimately secured wire taps; that the Guide-
lines were contrary to the Separation of Powers principle; that
the Court's sentencing of Ortiz under the resulting-death provision
of the federal drug trafficking statute pursuant to a "strict

6

-8-

liability" construction of it was repugnant to the rule of lenity;
and that calculating the base offense level under the Guidelines
for the users' deaths, without first finding "foreseeability" of
those deaths, was an improper application of the Guideline's
"relevant conduct" provision.  See Brief of Carlos Ortiz, Court of
Appeals No. 93-5473 (Issues 1-3, 10, 11, and 12, respectively).

On April 21, 1995, the Appeals Court affirmed his conviction
and sentence to the extent that the challenges raised against same
did not demonstrate error therein.  United States v. Ortiz, et al.,
No. 93-5473 (4th Cir. 1995)(unpublished).

The Supreme Court denied certiorari on October 2, 1995. Moore
v. United States, 516 U.S. 893 (1995).

E.    Collateral Proceedings

For many years and, ruefully, on many unsuccessful occasions,
your Petitioner has importuned this Court (and others) to disabuse
him of his statutorily excessive life sentence, doing so, however,
largely on imperfect premises and through a diversity of ill-adapted
collateral vehicles.

Undeniably pertinacious in those numerous filings, he implores
this Court to understand him as having—on each and every occasion
—been spurred by an earnest sense of entitlement to relief,
coupled with an equally earnest belief (albeit flawed) that the
procedural mechanism or vehicle being employed on the particular
occasion provided the appropriate utility.  While he was ultimately
incorrect in his legal theorizing, his intent was not to be abusive;
nor is he indifferent to the attendant burdens sustained on judicial
resources in the course of having to dispose of such flawed

7

initiatives.

The plain truth is simply that your Petitioner's relative aptitude has proved no match for the intricacies of the convoluted federal habeas corpus framework, especially as revolutionized by the Anti-Terrorism Effective Death Penalty Act. It is thus that he has been disposed to grapple as he has with the vehicles that comprise that framework, having never quite achieved purchase. That harrowing trek is recounted chronologically as follows:

1.   28 U.S.C. § 2255

On April 10, 1997, Ortiz filed a § 2255 motion (Civil No. S-97-1065) in this Court, D.E. # 487, assigning error to his conviction based on interrelated allegations that he has been prejudiced by the admission of evidence presented by the government on a count for which he was ultimately not convicted, viz., count 3. This motion was rebuffed in short order, the Court finding the challenges insubstantial enough to warrant summary dismissal under Rule 4, Rules Governing Section 2255 Proceedings. <u>See Memorandum Opinion Denying and Dismissing § 2255 Motion</u>, (April 14, 1997), D.E. # 488.

The only sentencing issue raised related to a weapons enhancement and was equally insubstantial. <u>See Id</u>.

2.   28 U.S.C. § 2244

In 2001, Ortiz filed with the Fourth Circuit Court of appeals an application seeking authorization to file a second § 2255 motion. The premise upon which this authorization was sought was the new constitutional rule announced in <u>Apprendi v New Jersey</u>, 147 L.Ed.2d

8

-10-

435 (2000). Because the Supreme Court had not announced this new
rule to be retroactively applicable to cases on collateral review,
authorization was denied. The request did not involve either of
the two grounds Congress designated as warranting such authorization.

3.   28 U.S.C. § 2241

In 2005, Ortiz filed in the district court for the Western
District of Virginia (Roanoke) a petition for a writ of habeas corpus.
There his premise for invocation of the writ was, again, the new rule
announced in Apprendi.   Denied. For the new rule thereof could not
render actually actually innocent by negating the offense of conviction.

4.   Federal Rule of Civil Procedure 60(b)

Ortiz has previously filed as well a motion for relief from
the judgment entered on his § 2241 request. Ortiz posited that the
court had erred and that his invocation was proper. Denied.

5.   Mandamus

Ortiz petitioned in the Fourth Circuit Court of Appeals for a
writ of mandamus to compel the district court in Virginia to acknow-
ledge him as having properly invoked the jurisdiction of that court
on the basis of Apprendi.   There was no indisputable right to this
relief, so the mandamus was declined.

6.   Nondescript Request for Review

Finally, just last year (2011), Ortiz entreated this Honorable
Court for review of his sentence in light of Kesseck v. United States,
2008 U.S. Dist. LEXIS 7739 (W.D.Wash. 2008). In that case the court
issued a writ of audila querela to disabuse the petitioner of a sen-
tence  held to be woefully inequitable on the facts of the case. While
Ortiz did not expressly invoke that remedial tool, this Court appears
to have considered the possibility and denied the request.

9

## II.   THE FACTS

On October 20, 1992, this Court (presided over at that time
by the Honorable Frederic N. Smalkin) issued a memorandum letter
in this matter to all counsel addressing as a pre-trial concern
the issue of whether the government would be permitted to offer
evidence aimed at establishing that death had resulted to persons
from the use of drugs distributed by the defendants charged as
conspirators in this case.  See Letter from Chambers of Judge
Smalkin (10/20/1992), D.E. # 184 (Exhibit A).

After recognizing that the government had expressed its intent
to adduce such evidence during the trial of the drug conspiracy
charge, you Honor went on to explain his enjoinder of this nature
of evidentiary presentation as being based on a legal conclusion
as to the elements of the drug charge:

> Because addict deaths have **nothing to do with the
> elements of the offenses**, ... the Court will not
> allow it at trial.  (Of course, the relevance of
> such evidence to sentencing is an entirely separate
> matter that need not be dealt with prior to trial).

Id., at ¶ 3 (emphasis added).

The government formally objected, and the Court issued a writ-
ten response on November 2, 1992, reaffirming its ruling on the
basis that, again, **"the charge does not have user death as an
element."**  Letter from Chambers (11/02/1992)(emphasis added),
D.E. # 223 (Exhibit B).  Trial was thus conducted with the proofs
being focused on the drug charge that the Court had concluded
underlied the indictment—one without resulting death as an element.

After the jury returned its verdict against Ortiz, the govern-
ment filed a sentencing memorandum seeking to have Ortiz held

10

**-12-**

accountable for the deaths of 30 individuals.  See Notice of Intent
to Seek Enhanced Penalties, D.E. # 357.

    The Court issued a memorandum notifying counsel of its decision
to convene a hearing on the matter, particularly to ascertain based
on the proofs adduced whether "death or serious bodily injury
resulted proximately from the substances distributed in the course
of th[e] conspiracy."   Memorandum Re Hearing, D.E. # 358 (Exhibit C).

    This second-degree-murder-trial $\frac{1}{}$ type hearing to assess the
sentencing factor of proximate causation of the deaths involved
much scientific evidence and testimony about the limitations of
various scientific methods of chemical analysis and toxicology.
See, e.g., Tr. of Hearing, May 17, 1993, at 8 (discussion about
concepts of "cause" and "manner" of death); 24 (Chief Medical
Examiner for Maryland testifying that ascribing cause of death to
"fentanyl" was academic insomuch that such broad characterization
could never be expected to identify any one of the numerous specific
types of chemical structures falling within that category of drug);
12 (M.E. acknowledging the medical inability to conclusively deter-
mine postmortem the exclusiveness of fentanyl as a cause of death
when other drugs also detected in toxicology screen); 29 (M.E.
confirming that procedures used were incapable of identifying the
particular type of fentanyl responsible for the 30 deaths); 44
(M.E. testifying that gas chromatography  test incapable of detec-
ting fentanyl); but see id. at 55 (M.E. testifying that gas

---

$\frac{1}{}$   The Court itself recognized that the charge Ortiz would be
      convicted of upon the resulting death factor being proven would
      be akin to statutory offense of manslaughter.  See Sentencing
      Hearing, May 18,

11

-13-

chromatography is capable of detecting fentanyl); accord at 116
(Baltimore Police Lab Chemical Analyst assuring that gas chromato-
graphy is accurate in the detection of fentanyl); compare at 43
(radioimmunoassay type of test being touted as necessary to detect
fentanyl in blood).

On May 18, 1993, this 2-day hearing concluded. The Court
rendered its verdict on the question of whether Ortiz had been
proved to be culpable for the deaths at-issue for purposes of 21
U.S.C. § 841(b)'s resulting-death variant:

> To me the general mens rea necessary to sustain
> the conviction under 846 or 841 is sufficient and
> there need not be any specific intent to cause
> harm or death or any knowledge that death or harm
> resulted. It goes with the territory. You sell
> the stuff and somebody dies from it, **the penalty
> is increased.**
>
> *   *   *
>
> The mens rea necessary to sustain a conviction is
> all the mens rea that is necessary in this case,
> and that mens rea was plainly made out as to each
> of the[ defendants] beyond a reasonable doubt[,]
> as attested to by the verdict of the jury. It is
> true the evidence is circumstantial, but in my
> judgment it is not a case for application of the
> rule of lenity or equal inferences or anything
> else. As I said, the evidence convinces me beyond
> a reasonable doubt that there were a number of
> deaths attributable to the drug distributions by
> this conspiracy of fentanyl.

Id., at 227 (emphasis added); 295.

The Court then proceeded to calculate Ortiz's sentence by
reference to the other factors it intended to found the ultimate
Guidelines sentence upon. It found that he was due a starting
base offense level of 38 because of its finding regarding his
culpability for the deaths of the individuals whom had overdosed
on fentanyl in Maryland during the conspiracy, id. at 301 (citing

12

-14-

as authority U.S.S.G. § 2A1.1(a)(2)).

It went on to find that Ortiz was due a 4-level enhancement
under the leader/organizer provision of the Guidelines, § 3B1.1(a),
ibid. Finally the Court attributed a 2-level increase in the
adjusted offense level for a total of 44 based on the fact that
Ortiz was the leader/organizer of a conspiracy in which a co-
defendant had possessed a gun, id. at 308 (engaging U.S.S.G. §
2B1.1(b)(1) in conjunction with § 1B1.3 to facilitate a weapons
enhancement).

The Court expressly eschewed any examination or establishment
of drug quantity:

> Frankly, I **want to avoid any kind of quantity
> determination** under 2D1.1, and I think if in
> fact -- I mean, **avoid all the argument with
> regard to that,** and if in fact the acts of
> distribution of fentanyl that resulted in deaths
> was relevant conduct under 1B1.3, then you have
> to start with the base offense level of 38, and
> if enhancements get to 43 or above, any other
> discussions are besides the point.

Id., at 297 (emphasis added). The Court shortly thereafter reaf-
firmed its resolve in the fact that the issue of resulting death
was the preeminent factor at play animating the ultimate sentence,
to the extent that such sentence was life. See Letter of Chambers
to Harvey Greenburg, **2/** (June 7, 1993), D.E. # 380 (Exhibit D):
"[T]he sentence of life in this case is based upon the fact that
death resulted to users of the substance." (Emphasis added.)

But for the Court's determination that the evidence adduced
at the sentencing hearing established Ortiz's conviction as one

---

**2/**    Counsel for co-defendant Adrian Scott.

13

-15-

involving resulting death, the statute set a maximum of 20 years

imprisonment for such unquantified drug offense. See 21 U.S.C. §

841(b)(1)(C):

> In the case of a controlled substance in schedule
> I or II, ... except as provided in subparagraphs
> (A), (B), and (D), such person shall be sentenced
> to a term of imprisonment **not more than 20 years**
> **and if death or serious bodily injury results**
> **from the use of such substance shall be sentenced**
> **to a term of imprisonment of not less than twenty**
> **years or more than life....**

Id. (emphasis added).

On June 14, 1993, the Court imposed sentence upon Ortiz pur-

suant to the foregoing Guidelines calculations; that sentence was

a term of life imprisonment. Sentencing Tr., at 31-34.

**Resulting-Death Provision Clarified**

Some near-six years later, the Supreme Court decided Jones v.

United States, 526 U.S. 227 (1999), and therein declared the

nature of an identical death-resulting provision as used by Congress

in one of its statutes. The provision as used there operated as a

determinant of whether the maximum penalty under the statute would

be higher. The Court therefore declared the provision an element.

The provision at-issue here in the drug trafficking statute under

which Ortiz stands convicted operates identically, with Congress

having conditioned a maximum of life versus 20 years imprisonment

upon a demonstration that death resulted from the use of the drugs

distributed.

Examining the drug trafficking statute under which Ortiz

stands convicted and sentenced recently after the Jones decision,

the Fourth Circuit Court of Appeals put the death-resulting provi-

sion as used in that statute in context, explicitly aligning

14

**-16-**

itself with the Sixth Circuit where that court interpreted the
death-resulting provision as operating indistinguishably from the
way it was declared to operate by the Supreme Court in pronouncing
it an element of the federal carjacking statute.  United States
v. Promise, 225 F.3d 150 (4th Cir. 2001)(en banc).

Given this synthesis of authority on the elemental nature of
Congress' death-resulting provisions, the effect of which voids
the inaccurate construction of the statute that led to this Court
sentencing Ortiz as though he was eligible for life when his bona
fide maximum was but 20 years, where these authorities have
derived only after the time Ortiz could have used them on direct
appeal or his first collateral initiative, he now premises this
instant petition on this confluence of factors.  He asks this
Honorable Court of Justice and Fairness to declare the true char-
acter of his offense of conviction in light of these decisions:
that being that he was by law only convicted of the substantive
offense of Drug Trafficking Sans resulting Death.

### III.   REASONS FOR GRANTING THE WRIT

#### POINT ONE

IN DECLARING CONGRESS' SIGNATURE DEATH-RESULTING PROVISION AN
OFFENSE ELEMENT OF THE FEDERAL CAR-JACKING STATUTE WHERE IT
OPERATED TO ELEVATE THE MAXIMUM PENALTY TO LIFE FROM 15 YEARS,
THE SUPREME COURT IN JONES V. UNITED STATES NECESSARILY DECLARED
LIKEWISE ABOUT THIS PROVISION AS USED IN THE FEDERAL DRUG TRAF-
FICKING STATUTE TO ELEVATE THE MAXIMUM PENALTY TO LIFE FROM 20
YEARS -- SO THAT IN THIS COURT HAVING EXPLICITLY OBSERVED THAT
THE DRUG CHARGE UNDERLYING THE INDICTMENT AGAINST ORTIZ HERE WAS
NOT ONE HAVING AS AN ELEMENT RESULTING DEATH, IT IS CONCLUSIVELY
ESTABLISHED THAT HIS CONVICTION WAS NOT ONE FOR THE LIFE ELIGIBLE
OFFENSE UNDER 21 U.S.C. § 841(b)(1)(C).

A.   The Writ of Audita Querela

A writ of audita querela is an extraordinary remedy under the

15

-17-

All Writs Act, 28 U.S.C. § 1651(a), and is generally limited to cases where "the absence of any avenue of collateral attack would raise serious questions about the laws limiting those avenues." United States v. Richter, 510 F.3d 103, 104 (2nd Cir. 2007). "The writ cannot ... provide a purely equitable basis for relief independent of any legal defect in the judgment." United States v. Rivera-Lebron, 2009 U.S. Dist. LEXIS 94164 (D.P.R. 2009)(citing United States v. Holder, 936 F.2d 1, 3 (1st Cir. 1991)). There must derive some legal objection to the conviction that has arisen subsequent to that conviction and which is not redressable pursuant to another post-conviction remedy. Holder, at 5.

"The legal development subsequent to the conviction must be such that it would render the judgment illegal had [the judgment] occurred after the development." Rivera-Lebron, at ___ (citing Holder, at 5).

Here, had the life sentence that consummated Ortiz's conviction as one for the aggravated drug crime involving resulting-death under 21 U.S.C. § 841(b)(1)(C) been imposed after Jones v. United States, 526 U.S. 227 (1999), was decided, the judgment would have been illegal under the circumstances of this case. Accordingly, where the temporality of that post-judgment legal development, in combination with the want of any collateral mechanism endowed to provide a means for Ortiz to take advantage of its revelation of his judgment's illegality, leaves him devoid of any way to meaningfully petition for relief from this illegal judgment, he availingly circumstantiates his situation as one entitled to be reviewed under the reservoir that is audita querela.

16

But for review by way of the writ, serious questions become animated about the constitutionality of the AEDPA's transgression against the fundamental protectorate of liberty that is habeas corpus. Namely, has the AEDPA unconstitutionally qualified the federal habeas corpus utility so as to have demeaned its vitality to remedy miscarriages of justice as the one evidenced here?

B. <u>Jones</u> Reveals a Defect in the Judgment Such That Would Render the Judgment Illegal Had it Occurred After That Substantive Development in the Law.

For the first time ever, the Supreme Court in 1999 became confronted with the serious constitutional question of whether it was contrary to the Sixth Amendment for a legislature to remove from the purview of the jury "control over facts determining a statutory sentencing range." <u>Jones</u>, at 248. This novel constitutional question was spawned as a result of the government urging a reading of the federal carjacking statute that would allow the statutory penalty ceiling to be increased to life from 15 years by a court's finding that death had resulted from the commission of the offense. See <u>Id</u>., at 240-44. The same finding was necessary in the case at bar, under 21 U.S.C. § 841(b)(1)(C), to raise the penalty ceiling to life from 20 years.

Recognizing its duty to avoid "grave and doubtful constitutional questions" where it is possible to do so by reading a statute susceptible to two interpretations—one more harsh than the other—pursuant to the less harsh, 526 U.S. at 239, the Court proceeded to do just that, announcing that the resulting-death provision of the statute was an element defining a separate crime. <u>Id</u>., at 251-52. The effect of this classification of the resulting-

17

death provision as an actual substantive element (on the conviction, that is) was to circumscribe the judgment, delimiting it to where it was without legal effect to constitute a conviction for any offense greater than one punishable by the 15-year maximum. The judgment of conviction didn't authorize any higher penalty.

The substantive ramification of this declaration of the Supreme Court pronouncing Congress' resulting death-provision—used to elevate statutory penalty ceilings—as an offense-defining element of a separate, aggravated crime, is brilliantly clear with respect to 21 U.S.C. § 841(b)(1)(C), to wit: it necessarily dictates that resulting-death provision operates no different there to define a separate, aggravated drug offense, viz., **Drug Trafficking Resulting in Death** (punishable by life). See United States v. Rebmann, 226 F.3d 521, 524-25 (6th Cir. 2000)(holding that the "if death results" provision of subparagraph (b)(1)(C) of the statute is not a mere sentencing factor applicable to the core crime of distribution set forth in § 841(a), but rather constitutes an element of a separate crime (distribution resulting in death)); cf. United States v. Rezaq, 134 F.3d 1121, 1134-37 (D.C. Cir. 1998)(declaring resulting-death provision of the air piracy statute to be an element of the substantive offense defined thereunder); and Logan v. United States, 434 F.3d 503, 507 (6th Cir. 2005)("We first conclude, contrary to the district court's determination, that Logan can rely on Jones because Jones' holding regarding the elements of the federal carjacking statute is pertinent to the correct interpretation of the federal arson statute.").

As explicitly recognized by this Court in the pre-trial stage,

18

Ortiz was not charged with this particular offense, but with the lesser offense of drug trafficking (sans resulting death as an element), so that no conviction for this life-eligible variant could legally have obtained; so that nor can such underlie the judgment pursuant to which he stands sentenced and imprisoned:

> Because addicts deaths have **nothing to do with the elements of the offense[]**, ... the Court will not allow it at trial.

Letter from Chambers to Counsel (10/20/1992), D.E. # 184 (Exhibit A); accord Letter of 11/02/1992, D.E. # 223 (Exhibit B): **"the charge does not have user death as an element."**

This means in the most literal sense that the judgment against Carlos Ortiz, insofar as it is for a life-eligible offense under § 841(b)(1)(C) congressionally eligible for life imprisonment is one for which "user death" _is_ an element. A fortiori, Ortiz is sentenced for a life-eligible crime while convicted merely of the lesser included variant of that crime which is eligible for but a maximum penalty of 20 years. See Apprendi v. New Jersey, 147 L.Ed.2d 435, 449 (2000):

> If, then, upon an indictment under the statute, the prosecutor prove the felony to have been committed, but fail in proving it to have been committed under the circumstances **specified in the statute**, the defendant **shall be convicted of the common-law felony only.**

(Emphasis added.)

So that there be not even the remotest of doubt about whether the offense charged against Ortiz in the underlying indictment was the 20-year offense under § 841 as opposed to the aggravated drug crime thereunder involving resulting-death and thus eligible for life imprisonment, one need only compare the charge in the indictment

19

here against indictments charging the aggravated death-resulting offense.  Compare Ortiz Indictment (Count 1), D.E. # 1 ("Carlos Ortiz ... did unlawfully, knowingly, and willfully ... conspire ... to unlawfully and intentionally distribute and possess with intent to distribute ... fentanyl, in violation of Title 21 U.S.C. § 841(a)(1)"), with indictment in United States v. Fields, 2011 U.S. Dist. LEXIS 88716 (S.D. Ill. 2011)("Fields is charged with distribution **resulting in the death of David Roth**, in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(C).  The indictment clearly sets forth **the elements of the offense**.")(emphasis added); United States v. Stacy, 2010 U.S. Dist. LEXIS 50298 (E.D. Mo. 2010) ("Defendant is charged in a three-count indictment with one count of distribution **resulting in death**.")(emphasis added); United States v. Webb, 2011 U.S. App. LEXIS 18825 (11th Cir. 2011)(indictment charged conspiracy to unlawfully distribute controlled substance, **"with resulting death,"** in violation of 21 U.S.C. §§ 841(a), (b)(1)(C), 846.)(emphasis added).

In Webb, the Eleventh Circuit had occasion to endorse the district court's explication to the jury that the element of resulting death operated to make for an aggravated drug trafficking crime under the statute; the district court had instructed the jury that: "the law provides that whenever death or serious injury is a result of the victim's use of a controlled substance that has been distributed ... by the defendant, a more serious offense is committed."  Id., at ___ (underline added).

The Sixth Circuit concurs as well on account of Jones, holding in United States v. Mann, 195 Fed.Appx. 430, 438 (6th Cir.

20

2006)(unpublished): "the 'if serious bodily injury results' langu-
age in Jones ... cannot be distinguished from the 'if death results'
language [of] 21 U.S.C. § 841(b)."   Again, it was on the basis of
how that language operated in the statute that the Jones Court
declared it an element that determined the statutory offense that
Jones had been convicted of; that is, one with a statutory maximum
of 15 years opposed to an aggravated offense under the statute
punishable by a higher penalty.   Id., at 236 ("Congress probably
intended serious bodily injury to be an **element defining an aggra-
vated form of crime**"), 243 (equating bodily injury with resulting
death in terms of defining distinct statutory offenses), 231-32
(ultimately reversing the district court's imposition of a 25-year
sentence as that sentence corresponded to an aggravated crime for
which Jones had not been convicted).

Such is the case with your Petitioner: he was not convicted
of drug trafficking resulting in death, yet this Court imposed the
maximum sentence on Ortiz applicable to that offense.   The develop-
ment in the law as wrought by Jones has made this defect in the
judgment discernible where it was not before.   This "defect," to
be sure, is recognized at law as one in both the conviction as
well as the sentence.   See, e.g., United States v. Thomas, 274
F.3d 655, 672 (2nd Cir. 2001)(en banc):

> [T]he error in this case can be seen as an error
> in sentencing -- i.e., as the district court
> imposing a sentence that it had no actual authority
> to impose.   It can also be seen as an error in the
> conviction -- i.e., as the conviction of a defendant
> for a crime different than the crime charged in the
> indictment....

Despite whichever lung of the judgment—i.e., the conviction

21

-23-

or sentence—the defect realized here is most befittingly ascribed
to as an error in, whether in the conviction or the sentence
"permitting the error to stand would damage the judicial system's
public reputation for fairness." Ibid. It would be the blatant
sanctioning of a decided miscarriage of justice. See United
States v. Teeter, 257 F.3d 14, 25 n. 10 (1st Cir. 2001); United
States v. Brown, 232 F.3d 399, 403 (4th Cir. 2003)(imparting that
a sentence that exceeds the statutory maximum applicable to the
offense of conviction constitutes a miscarriage of justice);
Naravaez v. United States, 641 F.3d 877, 882 (7th Cir. 2010)(a
"gratuitous infliction of punishment is a fundamental defect in
the court's judgment that clearly constitutes a complete miscar-
riage of justice")(bold added); see also United States v. McDowell,
210 Fed.Appx. 574, 576 (9th Cir. 2006), and United States v. Hahn,
359 F.3d 1315, 1327 (10th Cir. 2004)(en banc).

Indeed, "a sentence that exceeds the statutory maximum has
traditionally been viewed as a violation of the eighth amendment's
prohibition against cruel and unusual punishment." Ford v. Moore,
296 F.3d 1035, 1037 n. 6 (11th Cir. 2002). Your Petitioner humbly
submits, then, that such a grave and woeful sentence that could be
characterized in the foregoing manners must necessarily be one
repugnant enough to be recognized at any time, without regard even
for the imposing concept of finality.

What it boils down to here is refreshingly elementary in what
has become a relatively tortured custom of pathetic relief seeking
by federal prisoners unable to come to grips with the arguably
perverse narrowness of the contemporary nature of the waning great

22

-24-

writs.  To wit: where it is axiomatic that a "judicial construction
of a statute is an authoritative statement of what the statute
meant before as well as after the decision of the case giving rise
to that construction," Rivers v. Roadway Express, 511 U.S. 298, 312
(1994), and whereas the Supreme Court's interpretation of Congress'
signature resulting-death provision in the federal carjacking
statute (which parallels an identical provision in the federal
drug trafficking statute) conterminously declared the substantive
nature of this provision in 21 U.S.C. § 841(b)(1)(C) as defining a
separate, aggravated crime for which Ortiz has never even been
charged, it follows that Carlos Ortiz's sentence for that aggrava-
ted crime is illegal because it exceeds the maximum penalty for
his bona fide offense of conviction.

On account of Jones, which derived only after the time Ortiz
could have complained of the error here on appeal or collaterally,
his true and actual offense of conviction—with a maximum penalty
of 20 years—has become discernible.  Prior to that legal develop-
ment in that substantive law, a misconstruction of his offense of
conviction abounded and suborned the imposition of up to life
imprisonment.  The Court imposed that illegal penalty here, and
it is now incumbent upon this Court, charged with the duty to
uphold the Constitution, to declare the true nature of Ortiz's
offense of conviction.

Because Jones has already declared that which is necessary
with regard to the resulting-death provision being an element
defining a separate, aggravated offense under a statute of Cong-
ress, all that need be done of this Court is to declare the

23

-25-

circumscriptive impact which devolves on Ortiz's conviction as a direct and unavoidable consequence of the Supreme Court interpreting Congress' unique resulting-death provision to be a substantive determinant of whether a conviction is one for the generic offense under its statutes (i.e., simpliciter) or the more-severely punishable aggravated variant thereunder.

That impact is clear: <u>Jones</u> revealed a fundamental defect in the construction of Ortiz's offense of conviction, revealing it to be merely the 20-year offense under § 841(b)(1)(C) as opposed to the separate, aggravated variant thereunder punishable by life. That is, the object of his offense of conviction is that of drug trafficking sans resulting death, as contrasted with drug trafficking resulting in death.

    C.  The Absence of Any Other Avenue of Collateral Attack

        1.  28 U.S.C. § 2255

Ortiz could not bring the claim he brings here in an action pursuant to § 2255. This is because the basis for the claim derived only after the time for him to bring such a motion and, because he had prior thereto already brought a § 2255 motion before the Court, he cannot bring another unless § 2244 provides an avenue for him to bring a second such motion under the circumstances here. <u>See</u> 28 U.S.C. § 2255(h).

        2.  28 U.S.C. § 2244

Section 2244 does not so provide an avenue for him to bring his statutory interpretation claim in a second § 2255 motion. This is simply because "Congress has determined that second or successive § 2255 motions may not contain statutory claims."

24

Lorentson v. Hood, 223 F.3d 950, 953 (9th Cir. 2000).  The only
claims under this provision that Congress has provided an avenue
of litigation for are those which involve either a retroactive
Supreme Court case recognizing newly a constitutional right, §
2244(b)(2)(A), or newly discovered evidence that would have
forestalled a guilty verdict from being returned by the factfinder,
§ 2244(b)(2)(B).  Ortiz's claim is neither.

> 3.  28 U.S.C. § 2241

To the extent that Ortiz is not here claiming to be free from
guilt of any/all offenses under the statute pursuant to which he
is charged, this being because his claim of innocence extends only
to the aggravated drug trafficking offense under 21 U.S.C. § 841
(b)(1)(C), so that he remains lawfully convicted of the lesser
offense under the statute, he may not resort to 28 U.S.C. § 2241
as a competent legal mechanism to redress his claim of error (that
is, unless that nuance in his claim is recognized as being unable
to negate the fact that he is still legally innocent of the sub-
stantive offense for which he is sentenced to life imprisonment).

However, to the extent that this Court would feasibly decide
that such failure to be asserting "total factual innocence" of
every discrete offense under the statute of conviction does not
operate to defeat invocation of § 2241 through the savings clause
of § 2255 at subsection (e), that Ortiz has not advanced more than
"legal innocence" in this particular argument for relief (though
he does assert "factual innocence" in the argument at Point Three)
would yet pose an impediment to this Court exercising jurisdiction
thereunder.  See Bousley v. United States, 523 U.S. 614, 624 (1998)

25

("actual innocence means factual innocence, not mere legal insuf-
ficiency") and <u>Carreras v. Grandolsky</u>, 2009 U.S. Dist. LEXIS
58808, No. 08-1170 (N.D.N.J. 2009)("[P]etitioner's claim did not
fit within the [savings clause] provision's narrow confines because,
unlike [the petitioner in <u>In re Dorsainvil</u>, 119 F.3d 245 (3rd Cir.
1997)], the change in law did not 'negate' the crime for which he
had been convicted.").

The Supreme Court in <u>Jones</u> interpreted resulting-death as
defining a discrete offense, not "negating" any; thus the problem
with invocation of § 2241 through the savings clause ... perhaps.
<u>Jones</u> only renders Ortiz "not guilty" of the aggravated drug
offense for which he is sentenced, to be distinguished (albeit
absurdly) from "actually innocent" (as that term has become art-
fully known at law) of the crime of drug trafficking per se. This
ridiculous semantical micrology is at least comparable to those
distinctions that have been successfully urged on courts ultimately
finding themselves unable to entertain § 2241 petitions because of
same. <u>See</u>, <u>e.g.</u>, <u>Prost v. Anderson</u>, 636 F.3d 578 (10th Cir. 2011).

> D.  Serious Constitutional Questions Raised About the AEDPA's
>     Circumscription of the Collateral Remedial Framework
>     Should Ortiz's Claim Be Denied Review via Audita Querela.

Should this Court conclude that Carlos Ortiz yet has no avenue
of judicial review for his statutory-interpretation claim of inno-
cence, that is, after having found that he is ineligible for review
by way of any of the other mechanisms identified in Part C, supra,
the unavoidable question becomes whether the AEDPA constitutes an
unconstitutional suspension of the writ of habeas corpus as prohi-
bited by Article 1, § 9, cl. 2 of the U.S. Constitution, insofar

as its enactment of 28 U.S.C. § 2255(e) & (h) forecloses judicial
review of the miscarriage of justice claim here?

Ortiz, of course, claims—and has indeed demonstrated—that
he is legally innocent of the crime for which he stands sentenced
as a result of a previously unavailable statutory interpretation.
According to the Third Circuit in Dorsainvil, the unavailability
of any avenue of judicial review for such a serious claim of injus-
tice engenders a "thorny constitutional issue." 119 F.3d at 248.

The Sixth Circuit has labeled as a miscarriage of justice
itself the denial of any opportunity to bring up for judicial
review and rectification a sentence that exceeds the statutory
maximum applicable to the offense of conviction.  United States
v. Caruthers, 458 F.3d 459, 471-72 (6th Cir. 2006).  Ortiz assures
that his sentence of life clearly exceeds the 20-years maximum
applicable to his bona fide offense of conviction as made discer-
nible by Jone's pronouncements as to Congress' resulting-death
provision.

Ortiz's situation, then, proves to involve not a singular
miscarriage of justice problem, but a dual-faceted one that impli-
cates the Suspension Clause for the fact(s) of: 1) the potential
unavailability of any meaningful review forum for him to demon-
strate that a subsequent development in the substantive law
renders him legally innocent and 2) the potential unavailability
of any meaningful review forum for him to obtain redress for his
sentence where that development in the substantive law exposes the
sentence as one that exceeds the statutory maximum for the actual
offense of conviction.

27

But for this Court's allowance of resort to the All Writs Act for review of this dual-faceted miscarriage of justice claim, the AEDPA will have immortalized those 2 constitutionally unjust results by enacting 28 U.S.C. § 2255(e) & (h).  The literal nature of this bold assessment is illustrated by simply recognizing that on account of subsections (e) & (h), the Constitutional infirmities certifying Ortiz as a victim of a dual-faceted miscarriage of justice will otherwise be totally impervious to judicial review—from their inception to their culmination in Ortiz's death.  (After all, his is sentenced to life imprisonment.)  Part C, supra, makes this clear.

Whether by design or occurring by way of incident, the _effect_ of Congress' enactment of these strictures in the case at bar makes Congress culpable for having legislated in violation of the Suspension Clause.  Wherefore is because the Clause, never having ever been interpreted by any court as being concerned with the _intent_ of the legislature, makes unequivocally clear that the solitary objective to which its existence is committed is one of pure result—to wit: ensuring that the Privilege of the Writ of Habeas Corpus is never incapacitated by any bill of Congress except when rebellion arises from within or invasion from without.  See _Barry v. Merein_, 46 U.S. 103 (1847)(holding that the Suspension Clause exists "in restraint of executive and legislative powers," imposing upon "the judiciary ... the necessity, if the privilege of habeas corpus is suspended by any authority, to decide whether the exigency demanded by the Constitution exists to sanction [such suspension].").

28

-30-

Where the constitutionally enumerated conditions of rebellion
or invasion are not present, it has been held by the Supreme Court
to be the highest duty of the judiciary to declare any suspension
of the writ void.  See Smith v. Bennett, 365 U.S. 708, 713 (1961);
see also The Federalist No. 78 (Alexander Hamilton):

> [A] limited constitution ... [is] one which contains
> certain specified exceptions to the legislative
> authority; such, for instance, as that it shall pass
> no bills of attainder, no ex post facto laws, and
> the like.  Limitations of this kind can be preserved
> in practice no other way then through the medium of
> the courts of justice; whose duty it must be to
> declare all acts contrary to the manifest tenor of
> the Constitution void.  Without this, all the
> reservations of particular rights or privileges
> would amount to nothing.

(Underscoring added.)

The first condition in the establishment of entitlement to
this Court's declaration of subsections (e) & (h) of § 2255 as
void is met: the temporal enactment of these limitations was not
attended by extant rebellion or invasion.  The final condition
going to this entitlement to such a declaration is entirely
contingent upon this Court's determination of whether the writ
of audita querela under the All Writs Act, 28 U.S.C. § 1651, is a
viable collateral substitute for the remedy of habeas corpus in
this particular miscarriage of justice case.

If the Court finds in the affirmative, that the here Petiti-
oned for writ is a viable remedial substitute, Ortiz is thus
unable to establish that a "suspension" has occurred.  This is so
because, Congress does not violate the Suspension Clause by
limiting the scope of habeas review so long as the limitation does
not render the habeas remedy ineffective and inadequate to test

29

the legality of [one's] detention. <u>Swain v. Pressley</u>, 430 U.S.
372, 381 (1997).

    If, however, the Court decides conversely, that Congress
intended through subsections (e) & (h) to restrict as well review
of this otherwise unreviewable miscarriage of justice claim from
transpiring under the reservoir of the All Writs Act, it is then
that the law entitles Ortiz to a declaration of this Court of
Justice pronouncing void those limiting enactments—as a suspen-
sion is hence realized under the Suspension Clause. <u>See Boumedine
v. Bush</u>, 553 U.S. 723, 779 (2008)(holding that the Suspension
Clause is violated when a prisoner is denied "meaningful oppor-
tunity to demonstrate that he is being held pursuant to the
erroneous application or interpretation of relevant law.");
<u>Kolkevich v. AG of United States</u>, 501 F.3d 323, 333 (3rd Cir. 2007)
(holding that interpreting a statute as eliminating all forms of
judicial review for a constitutional claim raises the specter of
a violation of the Suspension Clause); <u>Kechijian v. California</u>,
621 F.2d 1, 4 n. 6 (1st Cir. 1980)("Totally barring judicial
consideration of a constitutional claim raises troublesome
constitutional problems.").

    But wait a minute: the Supreme Court has obliged the judiciary
via a protocol dictate called the avoidance principle to refrain
from reaching such troublesome and thorny constitutional questions
about acts of Congress where all that is required to allow the
enactment to be read as not implicating the Constitution is
assuming that Congress "legislates in the light of constitutional
limitations." <u>Jones</u>, 526 U.S. at 239 (quoting <u>Rust v. Sullivan</u>,

30

-32-

500 U.S. 173 (1991)).  This principle, held the Supreme Court,
"has so long been applied by this Court that it is beyond debate."
Ibid. (quoting Edward J. DeBartolo Corp. v. Florida Gulf Coast
Building & Trades Council, 485 U.S. 568, 575 (1988)).  See also
Hayman, supra, holding in the context of a Suspension Clause
challenge that, "This Court will not pass upon the constitution-
ality of an act of Congress where the question is properly presen-
ted unless such adjudication is unavoidable ...," id. at 223.

It is respectfully submitted that reaching the question of
whether Congress intended subsections (e) & (h) of 28 U.S.C. §
2255 to operate so as to deny any forum of review for the consti-
tutional claim here is not necessary.  For one, Congress has not
expressed this intent, so the Court should not impute same to it.
See Webster v. Doe, 486 U.S. 592, 603 (1988):

> [W]here Congress intends to preclude judicial
> review of constitutional claims its intent to
> do so must be clear.... We require this heigh-
> tened showing in part to avoid the "serious
> constitutional question" that would arise if a
> federal statute were construed to deny any
> judicial forum for a colorable constitutional
> claim.

Ortiz's claim is just such a colorable constitutional claim, yet
again, Congress has not necessitated that his claim is unreview-
able by any court sitting in a quasi-habeas posture.  It simply
has not.

Secondly, even where it could be argued based on Congress'
demonstrated potential to intend such "jurisdiction stripping" in
enacting statutes governing habeas review, see, e.g., Boumediene,
at 792 (discussing Congress' intent to strip the judiciary of

31

habeas review authority in enemy combatant cases), that such
intent "could have conceivably" been in attendance here cannot,
ipso facto, negate the legal precept that this Court must, "out
of respect for Congress, ... assume [that it] legislates in light
of constitutional limitations." Jones, at 239. This assumption
is dispositive here.

It means that this Court must find itself duly capable, indeed
obliged, to exercise its authority under 28 U.S.C. § 1651 to issue
a writ of audita querela to disabuse Carlos Ortiz of his sentence
of life where his statutory maximum was but 20 years. See United
States v. Collins, 373 Fed.Appx. 94, 95 (2nd Cir. 2010)(illustra-
ting that where serious questions as to the constitutional validity
of the "post-conviction structure" become implicated, the "narrow
possibility of audita querela relief has been preserved."). It
means that this Court must declare Ortiz's de facto conviction for
conspiracy to distribute fentanyl "resulting in death" to be void,
where his de jure offense of conviction is for the lesser offense
of conspiracy to distribute fentanyl "sans resulting death." It
means that the Court must interpret 28 U.S.C. § 2255, subsections
(e) & (h), as posing no obstacle to this Court remedying the
miscarriage of justice here under the power conferred it per 28
U.S.C. § 1651 to issue writs of audita querela.

F. Relief

In light of the foregoing analysis, this Court is petitioned
hereby to:

1. Issue a declaration under 28 U.S.C. § 2201 declaring
Carlos Ortiz to have been convicted of conspiracy to distribute

32

fentanyl as punishable as provided by the underlying offense of **Distribution of Fentanyl (sans Resulting Death)**, 21 U.S.C. § 841 (b)(1)(C); and

2.  Find the remedy suggested by the Court in Thomas, 274 F.3d at 672, instructive so that the Court should "vacate the improper conviction and the resulting sentence and [enter] a judgment of conviction for th[at] lesser-included offense and [] resentenc[e]" Ortiz accordingly, id.; or

3.  To the extent that the Court should interpret 28 U.S.C. § 2255 at subsections (e) & (h) to bar its exercise of jurisdiction under the All Writs Act, 28 U.S.C. § 1651, to remedy the miscarriage of justice demonstrated supra as detailed in Part B, declare the AEDPA void as to those enactments and proceed thereafter to find its post-declaration jurisdiction sufficient to issue an original writ of habeas corpus under the statutory provision it deems most apt.

## POINT TWO

**IN INTERPRETING 21 U.S.C. § 841(b) AS HAVING AS AN ELEMENT RESULTING DEATH, THE FOURTH CIRCUIT IN UNITED STATES V. PROMISE OCCASIONED A SUBSTANTIVE REFINEMENT THAT DEMONSTRATES THAT ORTIZ IS SENTENCED FOR A WHOLLY DISTINCT AND MORE SEVERE CRIME THAN THE ONE FOR WHICH HE STANDS CONVICTED.**

The Fourth Circuit in United States v. Promise, 255 F.3d 150 (4th Cir. 2003)(en banc), considers itself to have undertaken a reinterpretation of 21 U.S.C. § 841(b). See United States v. Alvarado, 440 F.3d 191, 199 (4th Cir. 2006)(describing Promise as a case "interpreting § 841").

Prior to Promise, which espoused—as is especially relevant

33

here—the Sixth Circuit's decision in <u>Rebmann</u>, [3/] supra, where it held resulting death to be a substantive element of subsection (b)(1)(C) of § 841, the Fourth Circuit didn't interpret § 841 (b)(1)(C) as embracing a separate, aggravated offense of "drug trafficking resulting in death."  After formally espousing the Sixth Circuit's interpretation of § 841(b)(1)(C) as just illustrated, however, there can be no intelligent dispute that such an aggravated offense is recognized now.

That aggravated offense is Congressionally punishable, according to § 841(b)(1)(C), by life imprisonment.  In contrast, the lesser offense under the statute, sometimes referred to as a basic or core or simple or generic offense, is assigned a maximum penalty of 20 years.  What separates these offenses in terms of definition is the prodigious factor of whether death resulted from the use of the substances underlying the distribution charge.  <u>See</u> § 841(b) (1)(C); ante, at 14.

Ortiz is not charged with the death-resulting version of the offense under the statute.  As already demonstrated ante, at 19-20, the offense Ortiz is charged with conspiring in commission of does not have as an element resulting death.  <u>Id</u>. (the record reflecting this Court's acknowledgement of this).  He is sentenced for this

---

[3/]    <u>See</u> <u>Promise</u>, at 157 ("Accordingly, Apprendi dictates that in order to authorize the imposition of a sentence exceeding the maximum allowable without a jury finding of a [statutorily designated factor, that factor] must be treated as an element of an aggravated drug trafficking offense.... In reaching this conclusion, we join every circuit that has applied Apprendi to § 841 in this context.  <u>See</u> <u>United States v. Rebmann</u>, 226 F.3d 521, 524-25 (6th Cir. 2006) (holding that, under Apprendi, death resulting from use of controlled substances distributed by the defendant is an element of an aggravated offense)").

34

aggravated offense, though, to a sentence of life, the maximum for
the aggravated offense under the statute, where Promise makes
clear that he was only convicted of the 20-year variant under §
841(b)(1)(C).

A sentence that exceeds the statutory maximum for the offense
of conviction constitutes a miscarriage of justice.  United States
v. Brown, 232 F.3d 399, 403 (4th Cir. 2003).  Promise makes that
miscarriage of justice discernible now, where prior to it the
fundamental defect in the Court's judgment was indiscernible.

To be sure, the law in the Circuit at the time that Ortiz
was sentenced was committed to an interpretation of the statute
that omitted from the list of defining elements under subsection
(b)(1)(C) the factor of resulting death.  See United States v.
Patterson, 38 F.3d 139, 143 (4th Cir. 1994).  That interpretation
has since been supplanted by Promise.

The effect is as explained in the analysis ante at Point One,
Part B, regarding the impact that Jones effected upon the judgment
here; that Promise vitiates an erroneous construction of the
statute under which Ortiz stands sentenced such that reveals that
he was actually convicted only of the basic offense under § 841
(b)(1)(C)(that is, conspiring to so commit).  Where his sentence
exceeds the statutory maximum for that basic offense, a fundamental
defect in the Court's judgment is realized, one "that clearly
constitutes a complete miscarriage of justice."  Naravaez, 641 F.3d
at 882; accord Brown, 232 F.3d at 403.

The writ of audita querela lies to redress such late-emerging
defect, particularly where no other remedial utility in the post-

35

-37-

conviction framework is currently endowed to confer upon the Court the necessary jurisdiction to entertain the claim. See ante at Point One, Parts C & D.

Again, the writ becomes aptly invoked where there derives "a legal development subsequent to the conviction [that] would render the judgment illegal had [the judgment] occurred after the development." River-Lebron, 2009 U.S. Dist. LEXIS 94164 (citing Holder, 936 F.2d at 3). That is precisely the case here, as can be seen as easy as recognizing that sentencing a defendant today to life on the charge underlying the judgment here would be to sentence him to a term decidedly in excess of the statutory maximum. Wherefore is because, under Fourth Circuit precedent, the only charge under § 841(b)(1)(C) that actually carries a statutory maximum of life imprisonment is one that constituent elements of which include resulting death. See United States v. Schnippel, 371 Fed.Appx. 418, 419 (4th Cir. 2010)(unpublished)("In order to establish beyond a reasonable doubt the final element of the offense, the Government must show that the victim's use of the heroin received from Schnippel was a but for cause of death.").

The Schnippel Court wasn't there speaking in the context of mere criminal procedure; no, the end to which it was speaking was the establishment of the "final element of the offense." Ibid. This is really unremarkable, though, seeing as how the Fourth Circuit's decision and analysis in United States v. Campbell, 259 F.3d 293 (4th Cir. 2001), commits it to interpreting any maximum penalty aggravator (except recidivism based ones) as an offense element after Promise. 4/

36

So to the extent that there could be any doubt about <u>Promise</u>'s impact on § 841(b)(1)(C), <u>Campbell</u> retrospectively establishes <u>Promise</u> as having effected a statutory interpretation dictate that compels any factor that increases the statutory penalty ceiling to constitute an offense element of a separate, aggravated crime (save, of course, recidivism). <u>See Id</u>., at 298-99 (classing <u>Promise</u> among <u>Jones</u> and <u>Castillo v United States</u>, 530 U.S. 120 (2000), in the context of discussing cases that compel the conclusion that bodily injury is an element of 18 U.S.C. 111(b).

All of this makes clear that <u>Promise</u> and its progeny evidence the Fourth Circuit's having jettisoned the interpretation of § 841(b)(1)(C) that it endorsed in <u>Patterson</u> at the time that Ortiz's conviction derived. Because the interpretation that it now ascribes to § 841(b)(1)(C) pertaining to the resulting death provision has the effect of revealing that Ortiz's current conviction is one for the lesser offense thereunder statutorily capped at 20 years' imprisonment, and where his sentence of life purports to correspond to the uncharged aggravated offense under subsection (b)(1)(C)

---

4/    While the sweep of <u>Promise</u> was in fact as broad as this, effectively spawning this very proposition for Fourth Circuit purposes, the fact that a footnote exists therein remarking that the Court was not there focused on deciding the specific question of how resulting death should be "treated" (<u>id</u>. at 151 n. 1) can at best evidence the fact that the actual impact of the ensuing analysis was yet to be fully appreciated by the author. For as evidenced by the conclusion arrived at by the <u>Campbell</u> panel in interpreting the assault of a federal official statute, whether or not the <u>Promise</u> Court was "intending" to impart a binding rule of statutory interpretation, it did just that as an ineluctable consequence of its reasoning regarding factors that increase the statutory ceiling, per se. The <u>Campbell</u> panel understanding its decision to be a foregone conclusion on the authority of <u>Promise</u>, went on to declare the element of bodily injury in 18 U.S.C. § 111(b) an offense element, as dictated per <u>Promise</u> (and the cases from which it derived) by the fact that it increased the statutory penalty that would otherwise apply. This rule of construction flows from <u>Promise</u>.

37

involving resulting death, Ortiz is duly entitled to redress from this extant miscarriage of justice via the here petitioned for writ of audita querela.

To the extent that any argument arise as to the inability of the writ to issue to Ortiz here based on these circumstances, Petitioner hereby incorporates the analysis at Point One, supra, Parts C & D, to charge that a suspension of the writ of habeas corpus has occurred should such argument be sustained. In that event, Ortiz asks for a judgment declaring the AEDPA void as to subsections (e) & (h) of § 2255.

POINT THREE

WHERE THE SUPREME COURT HAS DECIDED THAT IT IS UNCONSTITUTIONAL FOR A COURT APPLYING A PREPONDERANCE STANDARD TO ACT AS FACT FINDER ON A FACTOR THAT CONGRESS CONDITIONS A HIGHER STATUTORY PENALTY UPON, AND WHEREAS THIS COURT'S ACTING IN THAT PRECISE UNCONSTITUTIONAL CAPACITY HAS RESULTED IN ORTIZ BEING CONVICTED FOR A CRIME THAT THE EQUIVOCAL EVIDENCE WOULD HAVE PRODUCED A JURY VERDICT OF ACQUITTAL ON, A WRIT OF AUDITA QUERELA LIES TO AFFORD ORTIZ REDRESS.

A "request for writ of audita querela is prohibited where a prisoner argues that a new rule of procedure applied to his case could theoretically result in a lower sentence, but does not argue that his sentence is beyond the statutory maximum for the crime [] of conviction." United States v. Rivera-Lebron, supra, citing Trenkler v. United States, 536 U.S. 85, 99 (1st Cir. 2008).

Where this reserves the availability of the writ on the basis of such argument, that is, where the prisoner asserts an ability to show that the new rule of procedure would have forestalled the imposition of the sentence that he laments as being in excess of the applicable statutory maximum Ortiz's claim falls within this

38

**-40-**

narrow wedge.  He asserts just that ability to show that the
constitutionally flawed procedure under which he was sentenced
culminated in his statutory maximum being misapprehended and
consequently exceeded.

Ortiz straightly challenges "the sufficiency of the evidence
upon which the judge acted," Trenkler at 99, contending—unlike
the unsuccessful petition in Trenkler—that but for the constitu-
tionally repugnant procedure of the judge deciding the resulting-
death factor by a preponderance of the evidence, "a jury would
have reached a different result."  Ibid.  That different result
would have made the applicable statutory maximum by which this
Court was bound to sentence him within 20 years, as opposed to
life.  Wherefore is as explained ante, at 34, et seq., namely
that for an unquantified drug offense under 21 U.S.C. § 841(b)(1)
(C), the statutory maximum is 20 years, unless it is additionally
proven in the course of proving the charged offense that death
resulted from the use of the drugs underlying that charge.  Again,
there can be no legally tenable argument made that Ortiz is
convicted to anything other than an expressly unquantified drug
offense, for this Court commanded as much.  See ante, at 13.  So
20 years was definitely the unaggravated maximum.

The predominant focus in an inquiry into whether the writ
should issue in these dubious habeas times to a petitioner propound-
ing a claim of this nature is whether the proof/factfinder "misallo-
cation affected his substantial rights."  Trenkler, at 100.  The
Trenkler petitioner lost for an inability to establish the necessary
effect on these rights.  See Ibid.  Ortiz doesn't have that problem,

39

and thus his claim is not amenable to the adverse disposition which befell Trenkler on this basis.

Taking a look at the government's postulance on the factor of death having resulted to a person or persons from the usage of fentanyl attributable to Ortiz, it is able to be comfortably stated by an objected person that the purely circumstantial evidence presented both in favor of and against the contention sat in perfect equipoise. The problem, then, for the government is that the law says, for instance:

> [I]f the evidence tends to give equal or nearly equal circumstantial support to guilt or innocence ... [acquittal] is required: When the evidence is essentially in balance, a reasonable jury must entertain a reasonable doubt.

Kamienski v. Hendricks, 323 Fed.Appx. 740, 750-51 (3rd Cir. 2009) (unpublished).

But for the unconstitutional misallocation, Ortiz would have been eligible for an instruction to the jury to this effect, and further a directed verdict in the event that the jury failed to adhere to this binding principle in practice.

A. The Evidence

The government's case on the issue of resulting death against Ortiz was based on a theory of exclusivity, that Ortiz and group were the only persons in Baltimore, Maryland from whom fentanyl could be obtained. See Sentencing Hearing Tr. (May 18) at 273:24-274:4; 276:16-277:7; 279:13-20; 280:2-283:5; 285:18-287:6; 288:20-290:5. The defense, collectively, obliterated this recklessly irresponsible theory throughout the proceeding, as summed up in the preceding record citations.

40

-42-

That crude theory was simply that a) deaths occurred to
people in the Baltimore drug abuse culture traceable to an illegal
controlled substance known chemically (and broadly) as fentanyl,
id. (May 17) at 24-27; b) the geographic locales of the deaths,
though not even all occurring in the same county, indicate a
comparable distance from the region of the city where the charged
defendants engaged in distribution activities, (May 18) at 213-
214; a fortiori c) the conspiracy of which Ortiz was supplier in
obviously therefore supplied the drugs to whoever died in these
surrounding counties and areas of Baltimore with fentanyl in their
bodies during the charged scope of the conspiracy, id. at (May 17)
12-13, 25-27, 131-143, 150-57, 159:17-21, 160-161, 167-170, (May
18) 244, 246, 249, 254, 272, 276, 279, 285, 289, 295:22-25.

There were many, many holes in the government's case, from
demonstratively erroneous assertions of causation, see e.g., id.
(May 17) at 30-39 (one of the deaths claimed to be attributable
to fentanyl of Ortiz group actually being established as attribu-
table to overdose of "sublimaze" administered at hospital), to
devastating proofs establishing conclusively that at least one
decedent was in the practice of stealing his fentanyl from hospi-
tals, see id. (May 18) at 258-267; from the fact that fentanyl in
the yellow bags attributed to the Ortiz group was still being
dispensed after Ortiz and group were in custody, see id. at 210,
to the fact that at the same time they were said to have been
distributing these lethal bags, so were others, see id. (May 17)
at 169-70; (May 18) at 287. It was clear that the government
was reaching.

41

So much was the equivocal nature of the government's evidence
that even this Court acknowledged the problems the government
would have had if the applicable standard of proof had been reas-
onable doubt. See Id., at 273 (recognizing that the counter-proof
was compelling enough to implicate "equal inferences" tenet, but
that since "this isn't a reasonable doubt case[,] equal inferences
don't always go to the defendant...."); accord id. at 295 ("It is
true that the evidence is circumstantial, but in my judgment it is
not a case for application of rule of Lenity or equal inferences
or anything else.").

What it boiled down to was that, burdened with the rigorous
requirements of the reasonable doubt standard, the government
would have, as a matter of law, failed to established that the
deaths in question occurred from fentanyl distributed to the
victims by the Ortiz group. Wherefore is because, "[w]hen the
evidence is essentially in balance, a reasonable jury must enter-
tain a reasonable doubt." Kamienski, supra, at 750-51.

    B.  This Admittedly Procedural Claim States a Miscarriage
        of Justice.

"The Supreme Court has defined the term 'miscarriage of jus-
tice' as encompassing only these 'extraordinary instances when a
constitutional violation probably has caused the conviction of
one innocent of the crime.'" Trenkler, at 99 (quoting McClesky
v. Zant, 499 U.S. at 494-95). Insofar as the analyses at Points
One and Two, supra, make clear that the Supreme Court as well as
the Fourth Circuit define as a separate offense an aggravated
version of any core offense when the statutory maximum for it is
higher based on a statutorily designated factor, McClesky's

miscarriage definition applies here. That is, it applies where the constitutional violation of the proof standard and fact finder misallocation caused Ortiz to be effectively convicted of the aggravated crime of conspiring to distribute fentanyl with death resulting.

So construed, Ortiz's situation entitles him to invoke the audita querela remedy here for redress of the miscarriage of justice he stands as a victim of, just as contemplated by the Supreme Court when devising this all powerful innocence exception, see Murray v. Carrier, 477 U.S. 478 (1986), to ensure that the great writ of habeas corpus was ever available to achieve its purpose.

If this Court finds itself unable to issue the writ of audita querela to disabuse Ortiz of the statutorily excessive sentence here, it should only be because the Court has deemed the writ of habeas corpus codified at 28 U.S.C. § 2241 to be virtuous in conferring upon this Court the power to void the judgment against Ortiz to the extent that it should be for a conviction of the aggravated trafficking offense of distribution resulting in death.

In the absence of either of the above, or some other equally effective remedial action leaving Ortiz sentenced commensurate with the 20-year maximum his charge and conviction legally dictate, this Honorable Court is formally requested to declare a suspension of the writ of habeas corpus as argued for in Point One, Parts C & D, and thereafter deem itself consequently free to issue an original writ of habeas corpus under Article 1, § 9, cl. 2 of the United States Constitution, to redress the miscarriage of justice detailed in this Point Three.

43

-45-

## CONCLUSION

For the foregoing reasons, this Honorable Court should issue a writ of audita querela with the end effect being the excision of any part of Carlos Ortiz's sentence that is incommensurate with a conviction for conspiring to distribute fentanyl (<u>sans</u> resulting death).  Alternatively, a writ of habeas corpus should issue under 28 U.S.C. § 2241 meeting out the same relief.  Otherwise, this Court should declare subsections (e) & (h) of 28 U.S.C. § 2255 void under the Suspension Clause, and proceed thereafter to issue an original writ of habeas corpus to achieve redress here.

So earnestly requested,

Carlos Ortiz, Pro Se
Reg. No. 28906-037
U.S.P. Canaan
P.O. Box 300
Waymart, PA 18472

44

-46-

EXHIBIT A

EXHIBIT A

EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
FREDERIC N. SMALKIN
UNITED STATES DISTRICT JUDGE

101 W. LOMBARD STREET
BALTIMORE, MARYLAND 21201
(301) 962-3840
FTS 922-0840

October 20, 1992

FILED _____ ENTERED
LODGED _____ RECEIVED

OCT 2 0 1992

CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
CRIMINAL
_____ DEPUTY

COUNSEL OF RECORD

Re:   United States v. Carlos Ortiz, et al.    BY
      Criminal No. S 92-0301 AND
      United States v. Reginald Green, et al.
      Criminal No. S 92-0317

Dear Counsel:

      It has come to my attention that there is some question as to
whether the Government will be introducing, at trial, evidence of
deaths allegedly due to use of the controlled dangerous substances
said to have been distributed by the defendants in the captioned
cases.

      This matter came to my attention when one of the defense
counsel made an inquiry of one of my law clerks on a topic related
to this subject matter.  My law clerk subsequently inquired of
Special Assistant Myers as to the Government's intentions regarding
use of such evidence at trial and its relevance to the crimes
charged in the indictments.  She mentioned that the Government
would like to introduce such evidence for various purposes, such as
knowledge, clarification of intercepted conversations, and quantity
of drugs distributed.

      Because addict deaths have nothing to do with the elements of
the offenses before the jury in these cases, and because any
evidence of such deaths would have a prejudicial effect upon the
jury that substantially outweighs any meager probative value that
such evidence might have, Fed. R. Evid. 403, the Court will not
allow it at trial. (Of course, the relevance of such evidence to
sentencing is an entirely separate matter that need not be dealt
with prior to trial.)

      Although this letter is informal in nature, it nonetheless
constitutes an order of court, and the same will be docketed and
filed as such in the court file.

                              Very truly yours,


                              Frederic N. Smalkin
                              United States District Judge

FNS/skp
cc  Addressees
    Court File - Original

(184)

EXHIBIT B

EXHIBIT B

EXHIBIT B

UNITED STATES DISTRICT COURT

DISTRICT OF MARYLAND

CHAMBERS OF
FREDERIC N. SMALKIN
UNITED STATES DISTRICT JUDGE

101 W. LOMBARD STREET
BALTIMORE, MARYLAND 21201
(301) 962-3840
FTS 922-3840

November 2, 1992

Richard D. Bennett, Esq.
United States Attorney for
the District of Maryland
820 U.S. Courthouse
101 W. Lombard Street
Baltimore, MD   21201

FILED _____ ENTERED
_____ LODGED _____ RECEIVED

NOV 2 1992

At _____ _____
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
CRIMINAL                DEPUTY

Re:  United States v. Carlos Ortiz, et al.
     Criminal No. S 92-0301 and
     United States v. Reginald Green, et al.
     Criminal No. S 92-0317

Dear Mr. Bennett:

     This will reply to your letter of October 30, 1992 in the
captioned case, considered as a motion to vacate the Court's letter
ruling of October 20, 1992.

     The irrelevance of deaths due to the distribution of the
substances in issue in this case is utterly patent; the charge does
not have user death as an element.   The conclusion that any
conceivable probative value of such evidence is substantially
outweighed by the danger of unfair prejudice to the defendants is
also patent.   I shall not allow the Government to bring this
evidence to the jury's attention, in that it is relevant only to
sentencing.

     In light of the foregoing discussion, no briefing or argument
is necessary.

     Although this letter is informal in nature, it nonetheless
constitutes an order of court, and the same will be docketed and
filed as such in the court files.

                              Very truly yours,

                              Frederic N. Smalkin
                              United States District Judge

FNS/skp

cc  Addressee
    All Defense Counsel
    Court Files - Original

EXHIBIT C

EXHIBIT C

EXHIBIT C

## UNITED STATES DISTRICT COURT
### DISTRICT OF MARYLAND

CHAMBERS OF
FREDERIC N. SMALKIN
TED STATES DISTRICT JUDGE

101 W. LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-3840
FTS 922-3840

April 22, 1993

TO COUNSEL OF RECORD

Re:  United States v. Ortiz, et al.
     Criminal No. S 92-0301

Dear Counsel:

        I have reviewed the Government's sentencing memorandum, and
the following comments are intended to guide the proceedings
commencing at 10:00 a.m. on May 17, 1993 respecting the sentencing
factors.

        With regard to all defendants, the quantity of drugs is
largely irrelevant to setting the base offense level under U.S.S.G.
§ 2D1.1(a)(1) or (2), if the evidence establishes to my
satisfaction, by a preponderance, that death or serious bodily
injury resulted from use of the substance fentanyl distributed by
these conspirators. For those with a prior conviction, the offense
level is 43 under § 2D1.1(a)(1), and for others, the base offense
level is 38 under § 2D1.1(a)(2). Because the issue of whether
death or serious bodily injury resulted is not a question involving
determination of relevant offense conduct under U.S.S.G. § 1B1.3,
foreseeability to the particular defendant of death or serious
bodily injury is irrelevant. The enhancements apply absolutely and
automatically if death or serious bodily injury resulted.

        Therefore, I expect the sentencing factors hearing to focus
initially on whether death or serious bodily injury resulted
proximately from the substances distributed in the course of this
conspiracy.

        If the Government so proves by a preponderance of the
evidence, then, the inquiry is over as to all those defendants who
have a prior conviction that has not been disaffirmed or
challenged. That is, offense level 43--the maximum under the
Guidelines--and the inescapable statutory life sentence would apply
in the case of defendants                7C
                                          . None of these defendants
has filed the appropriate paper disputing the existence and/or
validity of prior convictions under 21 U.S.C. § 851.





-52-

EXHIBIT D

EXHIBIT D

EXHIBIT D

UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
FREDERIC N. SMALKIN
UNITED STATES DISTRICT JUDGE

June 7, 1993

101 W. LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-3540
FTS 922-3540

Harvey Greenberg, Esq.
Suite 700, Susquehanna Building
19 W. Susquehanna Avenue
Towson, MD   21204

        Re:   United States v. Ortiz, et al.
              Criminal No. S 92-0301

Dear Mr. Greenberg:

    This will respond to your letter of June 4, 1993, which I have ordered to be docketed and filed in the Court File as an objection to the presentence investigation report.

    First, I do not feel that the case of Harmelin v. Michigan, 115 L.Ed.2d 836 (1991) affects the current vitality of the proportionality analysis, under which the penalty here is constitutional, especially in view of the fact that the life sentence in this case is based upon the fact that death resulted to users of the substance.

    Although I agree personally with your second contention, viz., the unconstitutionality of the Sentencing Guidelines as a whole, I am afraid that the issue is foreclosed by decisions of the Supreme Court and the Fourth Circuit which have consistently refused to entertain the sort of fundamental due process arguments you raise against federal Guideline sentencing.

    Finally, as you acknowledge, in this case the role of the probation officer was somewhat different, in the sense that probation officers did not act as quasi-judicial officers. Even in the ordinary case, however, there would not be a separation-of-powers argument to be made, in that probation officers are appointed within, and function as officers of, the judicial branch of government, rather than the executive branch.

    This letter will be docketed and filed as a letter order acknowledging, but overruling, the objections to sentence stated in your letter of June 4, 1993.

                        Very truly yours,

                        Frederic N. Smalkin
                        United States District Judge

FNS/skp
cc  Addressee
    Brent J. Gurney, Esq.
    U.S. Probation
    Court File - Original

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CARLOS ORTIZ | * | |
| Petitioner | * | |
| v. | * | Civil Action No. WDQ-12-689 |
| UNITED STATES OF AMERICA | * | |
| Respondent | * | |
| | *** | |

**MEMORANDUM**

Carlos Ortiz, a federal inmate, filed this Petition for Writ of Audita Querela pursuant to 28 U.S.C. § 1651(a). For reasons to follow, the Petition will be denied.

## I. PROCEDURAL HISTORY

In 1993, Ortiz was convicted by a jury of conspiring to distribute and possess with the intent to distribute heroin and fentanyl and sentenced to a term of life imprisonment. *See United States v. Ortiz*, Criminal Action No. WDQ-92-301. His conviction and sentence were affirmed on appeal. *See United States v. Ortiz*, 52 F.3d 323 (4th Cir. 1995) (unpublished).

On April 10, 1997, Ortiz filed a Motion to Vacate, Set Aside or Correct Sentence which was denied on April 14, 1997. *See Ortiz v. United States*, Civil Action No. WDQ-97-1065 (D. Md. 1997). In 2001, the United States Court of Appeals for the Fourth Circuit denied his request for permission to file a second or successive § 2255 petition. His subsequent attempts to challenge his judgment under 28 U.S.C. § 2241, Rule 60(b) of the Federal Rules of Civil Procedure, and the All Writs Act, 28 U.S.C. § 1651(a), were unsuccessful.

## II.    PETITIONER'S CLAIMS

In this Petition Ortiz, who is self-represented, argues his life sentence exceeded the statutory maximum and he should instead have been sentenced to "'Conspiracy to Traffick [sic]in Fentanyl Sans Resulting Death.' " to comport with the holding in *United States v. Promise*, 255 F.3d 150, 156-57 (4th Cir. 2001) (specific drug quantities must be treated as elements, rather than sentencing factors, of aggravated drug trafficking offenses because the quantity finding exposes the defendant to an increased penalty under 21 U.S.C.A. §841(b)(1)(A)). Petition, p. 3.  Ortiz further argues his sentence was enhanced on the basis of facts not found by the jury and was rendered infirm in light of the United State Supreme Court's decision in *Jones v. United States*, 526 U.S. 227 (1997). [1]  Ortiz posits that "Jones revealed a fundamental defect in the construction" of his offense "revealing it to be merely the 20-year offense under § 841(b) (1) (c) as opposed to the separate, aggravated variant" punishable by life. Petition, p. 24. Ortiz alleges that because the sentencing court erred by enhancing his sentence on the basis of facts that were not found by the jury, his life sentence must be vacated and a sentence for the lesser included offense entered.  Petition, p. 33.

---

[1] Although Petitioner states his claim is based on *Jones*, 526 U.S. at 227, he is in effect predicating his claims on Supreme Court decisions in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) ( holding "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt) and its progeny.  The Supreme Court has not made its decisions in those cases retroactively applicable to cases on collateral review. *See United States v. Sanders*, 247 F.3d 139 (4th Cir.2001);*United States v. Morris*, 429 F.3d 65, 72 (4th Cir. 2005).  Regardless of whether the Petition is styled as a § 2255 motion  or Petition for Writ of Audita Querela, if the conviction became final prior to announcement of the rule, the rule does not apply retroactively.

2

**-56-**

## III.    DISCUSSION

### A.  Writ of Audita Querela

The Writ of Audita Querela provides extraordinary relief appropriate only in rare circumstances. *See United States v. Denedo*, 556 U.S. 904, 129 S.Ct. 2213, 2224 (2009).[2]  It is a common law writ used to attack a judgment that was correct when rendered, but that later became incorrect because of the circumstances that arose after the judgment was issued. *See Carrington v. United States*, 503 F.3d 888, 890 n. 2 (9th Cir. 2007).  Additionally, Audita Querela may not be used to challenge a conviction or sentence when the same challenge can be raised  under  28 U.S.C. § 2255. *See United States v. Valdez–Pacheco*, 237 F.3d 1077, 1080 (9th Cir. 2001) (collecting cases stating Audita Querela relief is not available to challenge a conviction or sentence when the prisoner's contentions could otherwise have been raised in a § 2255 motion).

### B.  28 U.S.C. § 2255 Motion to Vacate, Set Aside or Correct

Where, as here, a petition challenges the validity of the sentence, a § 2255 motion is the proper legal proceeding to request collateral relief.  *See* 28 U.S.C. § 2255.[3] The fact that Ortiz

---

[2] Writs of Coram Nobis and Audita Querela were used at common law to challenge infirm judgments. *See United States v. Torres*, 282 F.3d 1241, 1245 n. 6 (10th Cir. 2002). A Writ of Coram Nobis was used to attack judgments that were infirm when issued for reasons discovered later. *See id.* (internal quotation omitted).  A writ of audita querela was used to attack judgments that were correct when issued but later rendered infirm. *See id.* (internal quotation omitted). Rule 60(b) of the Federal Rules of Civil Procedure abolished both writs, but the Supreme Court later held that the Writ of Coram Nobis was still available in the criminal context.  *See United States v. Morgan,* 346 U.S. 502 (1954).  Federal courts have generally held the Writ of Audita Querela may also still be available under extraordinary and rare circumstances. *See United States v. Reyes*, 945 F.2d 862, 865–66 (5th Cir. 1991) (citing cases).

[3] Section 2255 provides the primary means of relief for federal prisoners claiming the right to release as a result of an unlawful sentence. Under 28 U.S.C. § 2255(a):

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by

3

previously filed a § 2255 motion that was denied does not render § 2255 relief unavailable or

inadequate so as to warrant extraordinary relief under the Writ of Audita Querela. *See In re Vial*,

115 F.3d 1192, 1194 n. 5 (4th Cir.1997) (stating "the remedy afforded by § 2255 is not rendered

inadequate or ineffective merely because an individual has been unable to obtain relief under that

provision... or because an individual is procedurally barred from filing a § 2255 motion ....")

(omitting citations); *Carrington v. United States,* 503 F. 3d 888, 890 (9th Cir. 2007) (statutory

limits on successive habeas petitions do not create a "gap" in the post-conviction scheme that can

be filled with common law writs); *Valdez-Pacheco*, 237 F.3d 1080, cited with approval in *In re*

*Watkins*, No. 06-07807, 2007 WL 1041035 (4th Cir. 2007) (unpublished) ("A prisoner may not

circumvent valid congressional limitations on collateral attacks by asserting that those very

limitations create a gap in the post-conviction remedies that must be filled by common law

writs."); *United States v. Aguilar*, 164 F. App'x 384, 384 (4th Cir.2006) (unpublished)

("[B]ecause § 2255 exists as a vehicle for collaterally attacking a conviction or sentence, the use

of an extraordinary writ [of audita querela] for the same purpose is inappropriate.").

    Ortiz's claims are cognizable under 28 U.S.C. § 2255, and  statutory requirements for

filing a second or successive § 2255 in federal district court may not be avoided by captioning

the Petition under Audita Querela. *See e.g. Calderon v. Thompson*, 523 U.S. 538, 554 (1998)

(subject matter of motion determines its status, not its caption); *Thurman v. Gramley*, 97 F.3d

185, 186-87 (7th Cir. 1996).  This Petition is tantamount to a successive § 2255 over which this

Court lacks jurisdiction unless prefiling authorization from the Court of Appeals has been

---

law, or is otherwise subject to collateral attack, may move the court which imposed the
sentence to vacate, set aside or correct the sentence.

obtained. [4] Ortiz does not allege he has obtained permission to file a successive §2255 motion, and this Court lacks jurisdiction to consider his claims under §2255.

## IV.    CERTIFICATE OF APPEALABILITY

A Certificate of Appealability will not issue absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2) (2006). When relief is denied on the merits, a prisoner satisfies this standard by demonstrating that reasonable jurists would find that the district court's assessment of the constitutional claims is debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003). Where, as here, relief is denied on procedural grounds, a petitioner must demonstrate both that the dispositive procedural ruling is debatable, and that the motion states a debatable claim of the denial of a constitutional right. *See Slack*, 529 U.S. at 484-85. Ortiz has not made that requisite showing and a Certificate of Appealability will be denied.

## V.    CONCLUSION

For the above stated reasons, the Court finds issuance of a Writ of Audita Querela is unwarranted. The Petition will be denied and this case closed by separate Order to follow.

3/13/12
Date

William D. Quarles, Jr.
United States District Judge

---

[4] A court may summarily dismiss a § 2255 motion where it "plainly appears" a petitioner is not entitled to relief. *See* Rule 4, "Rules Governing § 2255 Proceedings."

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CARLOS ORTIZ                              *

Petitioner                                *

v.                                        *            Civil Action No. WDQ-12-689

UNITED STATES OF AMERICA                  *

Respondent                                *
                                       ***

## ORDER

For the reasons stated in the foregoing Memorandum, it is this _____ day of March

2012, by the United States District Court for the District of Maryland, hereby ORDERED:

1. The Petition for Writ of Audita Querela IS DENIED;

2. A Certificate of Appealability IS DENIED;

3. The case IS CLOSED; and

4. The Clerk SEND a copy of this Order and Memorandum to Petitioner.

_____
William D. Quarles, Jr.
United States District Judge

-60-

Carlos Ortiz
Reg No. 28906-037
United States Penitentiary Canaan
P.O. Box 300
Waymart, PA. 18472

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

Carlos Ortiz,

                      Petitioner,

          v                           **Civil No.** WDQ-12-689

United States of America,

                      Respondent.

MOTION TO VACATE ORDER PREMISED ON CLEAR ERROR OF LAW
PURSUANT TO RULE 59(e), FED.R.CIV.PR.

────────────§────────────

          This Court is hereby moved to vacate as legally erroneous
its Order of March 13, 2012, whereby the Court denied on procedural
grounds Ortiz's petition for a writ of audita querela. Where the
error upon which the Court's procedural disposition is predicated
is manifestly apparent, and whereas it is clear that the Court's
procedural ruling could not have derived but for the fallacy Ortiz
identifies herein as the operative element fostering that ruling,
Rule 59(e)'s utility providing for the correction of clear errors
of law is perfectly invoked to effectuate the vacatur of the above
Order.

     I.   Introduction

          Petitioner brought to this Court a petition for relief under
the aegis of the "All Writs Act", 28 U.S.C. § 1651, specifically
a request for <u>initial</u> habeas review of a statutory interpretation

claim, in the nature of an audita querela proceeding.

The predicate for his claim(s) was the Supreme Court's 1999 decision in Jones v United States, 526 U.S. 227 (1999), a substantive decision, which had the effect, claimed Ortiz, of revealing that he had been convicted of an offense with a lower statutory maximum than the one for which he was sentenced, and continues today to be sentenced under.

Ortiz's lucidly articulated argument establishing his entitlement to audita querela review made clear that it was the temporality of the Jones decision (that is, its post-judgment evolution) that gave him the right of way to invoke the audita querela remedy, in that because it was not handed down until 1999, some two years after Ortiz's initial habeas initiative had been concluded, he had not the opportunity to litigate a claim based on the statutory interpretation rendered in that case. Ortiz's initial habeas initiative had been concluded in 1997, making for a temporal impossibility of a Jones claim being propounded.

Preempting the possibility that any other reason would be conveniently seized upon to justify a refusal to reach the merits of the audita querela request, Ortiz set forth an argument and cogent analysis going to why a failure to provide review of his never-before-heard claim of a miscarriage of justice would constitute a suspension of the writ of habeas corpus, defined such by Supreme Court authority interpreting Article 1, Section 9, Cl. 2 of the U.S. Constitution. This combination of legally unassailable premises guaranteed of a merits review.

This Court, however, responded in a way that was completely

2

-62-

unable to be anticipated by even the best of legal minds, that is,
in justifying its refusal to reach the incredibly staunch merits
of Ortiz's claim: it held that Ortiz could not availingly invoke
the audita querela remedy because he could have brought his <u>Jones</u>
claim in his initial § 2255 proceeding, because <u>Jones</u> was decided
in <u>1997</u>, the same year Ortiz brought his initial habeas action.
This is mystifying, and provides the basis for this present appli-
cation.

Without the fallacy involved in the Court's reasoning as to
why Ortiz could have brought his <u>Jones</u> statutory interpretation
claim pursuant to another vehicle, the Court would have been forced
as a matter of prevailing law to either address the merits of the
claim(s) or declare Ortiz's Suspension Clause argument demanding
of a declaration invalidating certain sections of the AEDPA.

All of this was averted by a simple fallacy going to when the
Supreme Court handed down <u>Jones</u>.

Finally, to solidify its rationale that Ortiz could not invoke
the audita querela remedy because he could have brought the claim
he asserts in a § 2255 proceeding, the Court proceeded to give Ortiz's
claim a sua sponte make-over, labeling it a mere <u>Apprendi v New
Jersey</u>, 530 U.S. 466 (2000), gripe, where in substance it clearly
charged a defect in his <u>conviction</u> principally.

The errors are salient and beg of correction if fairness and
the law retain any attendance in our contemporary system of diluted
habeas law.

II.   THE COURT ERRED IN CONCLUDING THAT <u>JONES</u> DERIVED IN 1997,
      AN IMPERFECT UNDERSTANDING THAT MATERIALLY CONTRIBUTED TO
      THE COURT'S APPARENT CONCLUSION THAT ORTIZ'S ABILITY TO
      HAVE BROUGHT SUCH A CLAIM IN HIS INITIAL HABEAS INITIATIVE

3

unable to be anticipated by even the best of legal minds, that is, in justifying its refusal to reach the incredibly staunch merits of Ortiz's claim: it held that Ortiz could not availingly invoke the audita querela remedy because he could have brought his <u>Jones</u> claim in his initial § 2255 proceeding, because <u>Jones</u> was decided in <u>1997</u>, the same year Ortiz brought his initial habeas action. This is mystifying, and provides the basis for this present application.

Without the fallacy involved in the Court's reasoning as to why Ortiz could have brought his <u>Jones</u> statutory interpretation claim pursuant to another vehicle, the Court would have been forced as a matter of prevailing law to either address the merits of the claim(s) or declare Ortiz's Suspension Clause argument demanding of a declaration invalidating certain sections of the AEDPA.

All of this was averted by a simple fallacy going to when the Supreme Court handed down <u>Jones</u>.

Finally, to solidify its rationale that Ortiz could not invoke the audita querela remedy because he could have brought the claim he asserts in a § 2255 proceeding, the Court proceeded to give Ortiz's claim a sua sponte make-over, labeling it a mere <u>Apprendi v New Jersey</u>, 530 U.S. 466 (2000), gripe, where in substance it clearly charged a defect in his <u>conviction</u> principally.

The errors are salient and beg of correction if fairness and the law retain any attendance in our contemporary system of diluted habeas law.

II.   THE COURT ERRED IN CONCLUDING THAT <u>JONES</u> DERIVED IN 1997,
      AN IMPERFECT UNDERSTANDING THAT MATERIALLY CONTRIBUTED TO
      THE COURT'S APPARENT CONCLUSION THAT ORTIZ'S ABILITY TO
      HAVE BROUGHT SUCH A CLAIM IN HIS INITIAL HABEAS INITIATIVE

3

OPERATED TO PRECLUDE ANY POSSIBILITY OF HIM INVOKING
THE AUDITA QUERELA REMEDY.

A.    Rule 59(e)

"Under Rule 59(e), a court may grant a motion to alter or
amend judgment to ... correct a clear error of law or prevent
manifest injustice." Walker v United States, 2011 U.S. Dist. LEXIS
102246 (D. Md.), No. WDQ-10-2739 (Sept. 9, 2011), citing Gagliono
v Reliance Std. Life Ins. Co., 547 F.3d 230, 241 n. 8 (4th Cir.
2008).

Here, the Court is being asked to act pursuant to a charge
that both conditions are present; a clear error of law (on account
of the fallacy of when Jones came down resulting in the Court
deeming Ortiz ineligible for audita querela review because he
could have brought the claim in 1997), and the need to prevent
a manifest injustice (on account of the law recognizing the denial
of any opportunity to obtain review of a miscarriage of justice
claim as itself a manifest injustice, see Ortiz Petition, at 27).

B.    Discussion

At page 2 of its Opinion, the Court makes a mistake about the
year Jones was handed down, and in doing so, presages the error it
makes in thereafter concluding that this Jones claim could have
been brought in 1997 when Ortiz's initial § 2255 was required to
be brought. The glaring problem, as noted, is that Jones was
rendered in 1999. Id.

It can only be that this is what led the Court to conclude
that the All Writs Act's requirement of being a utility of last
and only resort couldn't have been satisfied. Wherefore is
because, unless the Court was able to do as it did and misconstrue

4

Jones as a 1997 decision, it would have found itself forced to acknowledge that there was no other congressionally prescribed procedure by which Jones could have been parlayed by Ortiz. On that understanding, the audita querela prerequisites were met, clearly. So it had to be the inaccurate Jones evolution date; nothing else would reasonably explain the blatantly erroneous conclusion that Ortiz was barred from audita querela review on the basis of an ability to bring the claim in another procedural capacity.

What is more, and is itself unfair to the evolution and edification of federal habeas jurisprudence, the error allowed the Court to deflect an otherwise inevitable confrontation with Ortiz's suspension Clause argument. That argument is insurmountable to the extent that the extent the Court would deny Ortiz's petition on procedural grounds, provided such a denial does not emanate from an inaccurate understanding of when Jones was decided.

Based on the foregoing, the Court should correct the error inhering in its procedural ruling, thus acknowledging that Jones could not have been brouhgt at the time that Ortiz brought his initial collateral attack, and should accordingly  reassess the basis upon which it held that the All Writs Requirement of being the exclusive remedial utility was not to met by the underlying petition. Upon finding the inevitable, i.e., that Ortiz could not have brought his Jones claim in 1997 as a temporal matter, the Court should do justice and vacate its March 13, 2012, Order; it should then proceed to deal with the unusually meritorious claim stating a right to be disabused of what is now a miscarriage of justice.

III.   THE COURT        5.

III. THE COURT COMMITTED SALIENT, CONSEQUENTIAL ERROR IN
FORCING ORTIZ TO BE COMPLAINING OF MERELY A PROCEDURAL
"APPRENDI ERROR", SO MUCH THAT AN ACKNOWLEDGEMENT THAT
HIS CLAIMS REALLY WENT FAR BEYOND THAT TO STATE A CLAIM
OF STATUTORY INTERPRETATION WOULD HAVE COMMITTED THE
COURT TO ADMIT THAT RELIEF WAS DUE.

The gravamen of the Court's re-interpretation of Ortiz's claims

(only the third of which is premised on a complaint about the suf-

ficiency of the evidence with which a jury would have been presented)

is that Ortiz is challenging merely his "sentence". This is error

in the Court's understanding of what it is that Ortiz actually

challenges, viz., his <u>conviction</u>.

This error disposes the Court to its ultimate erroneous rulings,

insofar as a challenge to merely one's sentence in a collateral

proceeding would certainly fall within the general boundaries of

28 U.S.C. § 2255, provided MORE IS NOT ALLEGED. Ortiz clearly

charged "more" than mere sentencing error; he lamented, where he

could not have at the time of his first collateral initiative, that

a <u>subsequent</u> development in the substantive law rendered his <u>convic-

tion</u> invalid. This is the imperative element that the Court overlooked

and, as a direct consequence, disabled itself from appreciating the

conforming nature of Ortiz legal theory invoking the writ of audita

querela.

<u>Further</u> it was—to be distinguished from <u>merely</u>—that Ortiz

did claim in pursuance with the legitimating audita querela premise

endorsed in <u>Trenkler v United States</u>, 536 F.3d 85, 99 (1st Cir. 2008),

that his statutory maximum was transgressed. The Court erred in not

recognizing such premise as legitimate under the circumstances

pleaded, yet this error only goes to the third argument raised by

Ortiz in furtherance of his audita querela petition. See <u>Petition</u>,

6

at 38 (Point Three).

The Court goes on at page 4 of its opinion to assert an erroneous legal conclusion that is of great consequence in its procedural ruling as well. It holds that "Ortiz's claim's are cognizable under 28 U.S.C. § 2255 ...." This is manifestly incorrect. As explained preemptively in Ortiz's petition, at Part III.C, none of his claims —the predicate of which evolved subsequent to the filing of his initial § 2255—fall within the statutory provisions Congress set forth to allow one to file for review of such claims in the circumstances here.

The Court has effectively consummated the very suspension of the writ of habeas corpus that Ortiz charged to be the case should he be deprived review by way of the writ. Id., at Part III.D. The Court errors, as noted earlier, by not addressing that distinct, discrete part of Ortiz's claims.

The Court does violence to Ortiz's claim by effectively re-writing it. Indeed, it unfairly distills from context statements Ortiz makes in describing the "effect" of the error in his conviction to convert Ortiz's claim into one of a mere sentencing issue. This is unfortunate, yes, but can still not negate the reality that page after page after page Ortiz hammers away at the fact that his conviction sustains an impact on account of Jones's 1999 interpretation of Congress's signature "resulting death" provision.

This judicial conversion of his clearly stated issues is facilitated by simply misunderstanding the crucial distinction between Jones and Apprendi, and then proceeding to read Ortiz as having predicated his claims for relief on the latter. See Opinion, at 2, n. 2.

7

-68-

For purposes of invoking the audita querela remedy, a substantial and material distinction exists between the typical retro-activity-dependent <u>Apprendi</u> claim asserting entitlement to 21 U.S.C. § 841(b)(1)(C)'s maximum of 20 years (pressed by prisoners whose statutory quantity thresholds were determined by the court versus the jury <u>before</u> the <u>Apprendi</u> rule) and the purely § 841(b) statutory-interpretation claim propounded by Ortiz here, charging that his life sentence is one that exceeds the statutory maximum applicable to the actual offense that clarifying Supreme Court authority has established the judgment against him as certifying his guilt on.

That distinction is simply that the proposition underlying the issue Ortiz brings here, as already implicit from the preceding statement, relies exclusively upon the Supreme Court's <u>interpretation of the federal death resulting provision</u>, while the proposition underlying the former type of claim relies exclusively (and hence fatally) on the <u>rule announced in Apprendi</u>.

The non-retroactivity of <u>Apprendi</u>, while incapacitating any claim asserting entitlement to the 20-year maximum of § 841(b)(1)(C) based on the new procedural rule announced by the Supreme Court in that case, has absolutely no impact upon Ortiz's § 841(b) claim, which derives its virtue from a completely different source of authority. What it boils down to, then, is the fact that the claim Ortiz brings is sufficiently and legally distinct so as to be exempt from the manner of disposal due <u>Apprendi</u> based claims that assert a retroactive entitlement to the 20-year maximum of § 841(b)(1)(C) in cases where the conviction has become final before that decision.

8

**-69-**

Ortiz's issue is grounded in the principle that a statute means the same thing at its enactment as it does until substantively amended. Here, § 841(b) has never undergone substantive amendment, so that in the Supreme Court in Jones CLARIFYING that a prerequisite to a conviction for the "if death results" variant of the drug trafficking crimes under § 841(b), indeed any such statute inclusive of that provision, is a jury determination of that substantive ELEMENT, the High Court effectively announced that Ortiz's conviction was not one for the death-resulting version of the drug trafficking offense under § 841(b)(1)(C)——an offense for which he is sentenced today.

Jones and not Apprendi, then, had the effect of voiding Ortiz's conviction on count 1 to the extent that it was one for Drug Trafficking Resulting in Death, leaving it viable only to the extent that could be punished commensurate with the elements of the lesser included drug offense under § 841(b)(1)(C). The Supreme Court in Jones interpreted the death-reulting provision in a way that "qualified" Ortiz's conviction, ameliorating a fundamentally imperfect construction of the statute that had abounded up until that point.

Be this the case, that missed distinction in what Ortiz is really bringing is prodigious for the rightful disposition of his audita querela petition. It is determinant of whether Ortiz may rely retroactively upon the Supreme Court's pronouncements to substantiate his claims.

The judicial amendment of Ortiz's claim to be one predicated on the rule announced in Apprendi, as opposed to Jones, proves to garner Ortiz a disposition tailored to a claim that he has never propounded in his pursuit of a writ of audita querela, an enfeeebled

9

-70-

claim at that.

To be sure that the Court fully appreciates the principal
error Ortiz attributes to it for purposes of this 59(e) application,
it is the fact that the Court has declared the non-retroactivity of
Apprendi as the dispositively fatal element in Ortiz's audita querela
initiative. See Opinion, at 2, n. 1.

Based on the analysis here, which analysis explains irrefutably
that Ortiz's issues (save for Point Three) turn on a substantive
refinement in the law, it is clear that the Court's conflation of
Ortiz's Jones-based claims as mere Apprendi-based procedural claims
impairs the Court in its ability to properly apply the law informing
audita querela pursuits. In a word, the Court has incapacitated itself.

Ortiz does not rely upon Apprendi for Points One or Two in
his petition; he instead relies clearly upon Jones interpretation
of the death resulting provision Congress uses to define aggravated
statutory offenses. Point Three of the petition does involve the
rule announced in Apprendi, but in the precise way that Trenkler,
supra, endorsed as a legitimating invocation of the audita querela
remedy.   Justice compels that this Veteran Court, demonstrably
and verifiably familiar with the intricacies of habeas law after
authoring countless dispositions in that area, revisit Ortiz's
petition for further perusal. Justice compels this.

IV.   CONCLUSION

To the extent that the Court has overlooked the facts that
1) the legal development Ortiz is relying upon is the post-judgment
substantive decision in Jones, and 2) the law on audita querela
designates such as the criteria for proper invocation of the writ's

10

utility, the Court must 3) acknowledge, even begrudgingly, that it
was legally obliged in the face of the preceding state of affairs
to determine if either a) that post-judgment legal development in fact
revealed a fundamental defect in Ortiz's **judgment**, or b) the writ
of habeas corpus had been suspended as relates to Ortiz's attempt
to obtain review of his miscarriage of justice claim. See _Ortiz_
_Petition_, at Part III.D.

For these reasons, this Court should vacate its March 13, 2012
Order disposing of Ortiz's petition on flawed procedural grounds and
issue an order for the government to address the merits of Ortiz's
claims.  Warranting grounds exist for this action.

Respectfully submitted,

Carlos Ortiz

### CERTIFICATE OF SERVICE AND TIMELY FILING

It being this 9th day of April, 2012, and I, Carlos Ortiz,
being fully cognizant of the penalty prescribed for perjury, it is
accordingly that I aver that:

1) I have this day turned over to legal mail staff here at
the USP Canaan for forthright forwarding to this Court, this document
and one copy thereof, bearing appropriate first class postage, addressed
to the Clerk at 101 W. Lombard St., Baltimore, Md. 21201; and

2) I have also this day caused to be served on the government
a copy of such document, via regular U.S. Mail, bearing first class
postage appropriate for mailing expense, at:

Attested and executed this 9th day of April, 2012:

Carlos Ortiz

11

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CARLOS ORTIZ, # 28906-037          *
                                   *
Petitioner                         *
                                   *
v.                                 *    Civil Action No. WDQ 12-689
                                   *
UNITED STATES OF AMERICA           *
                                   *
Respondent                         *
                                  ***

## ORDER

Before the Court is a Motion pursuant to Federal Rule of Civil Procedure 59(e) filed by

Carlos Ortiz, requesting reconsideration of the Order, denying his Petition for Writ of Audita

Querela.

Courts have recognized three limited grounds for granting a motion for reconsideration

pursuant to Federal Rule of Civil Procedure 59(e): 1) to accommodate an intervening change in

controlling law, 2) to account for new evidence not available at trial, or 3) to correct clear error

of law or prevent manifest injustice. *See United States ex rel. Becker v. Westinghouse Savannah

River Co.*, 305 F.3d 284, 290 (4th Cir. 2002) (citing *Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co.*,

148 F.3d 396, 403 (4th Cir. 1998)), *cert. denied*, 538 U.S. 1012 (2003). Rule 59(e) "may not be

used to relitigate old matters, or to raise arguments or present evidence that could have been

raised prior to the entry of judgment." *Pacific Ins. Co.,* 148 F.3d at 403 (quoting 11 Wright, et

al., Federal Practice and Procedure § 2810.1, at 127–28 (2d ed.1995)). Where a party presents

newly discovered evidence in support of its Rule 59(e) motion, it "must produce a legitimate

justification for not presenting the evidence during the earlier proceeding." *Id.* (quoting *Small v.

Hunt*, 98 F.3d 789, 798 (4th Cir.1996)) (internal marks omitted). "In general, 'reconsideration of

1

a judgment after its entry is an extraordinary remedy which should be used sparingly.' " *Id.* (quoting Wright, et al., supra, § 2810.1, at 124).

Ortiz provides no grounds to warrant reconsideration of the order dismissing this action. To the extent he wants to raise claims to collaterally attack his judgment of conviction, he may do so by filing a Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 after first obtaining pre-filing authorization from the United States Court of Appeals for the Fourth Circuit to file a successive § 2255 motion.

Accordingly, it is this __10th__ day of January 2013, by the United States District Court for the District of Maryland hereby ordered:

1. The Motion (ECF No. 4) IS DENIED; and

2. The Clerk SHALL SEND a copy of this Order to Petitioner.

William D. Quarles, Jr.
United States District Judge

2

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,                          CASE NO.   1:12-cv-00689-WDQ

Respondent,

v.                                                 **NOTICE OF APPEAL**

CARLOS ORTIZ

_____  Petitioner.

The petitioner in the above captioned matter hereby notices his election to appeal to the

Fourth Circuit Court of Appeals from the following orders issued by this Court:

1.   *Order of January 10, 2013* [R. 5], denying Petitioner's motion under Civil Rule
     59(e) seeking vacatur of the Court's 3-13-12 denial of Petitioner's Audita Querela
     request; and

2.   *Order of March 13, 2012* [R. 3], denying Petitioner's Petition for a Writ of
     Audita Querela.

This 26th day of February, 2013 --

### SERVICE

I have this day turned this document over to prison legal-mail staff for forwarding to this Court,
equipped with appropriate first class postage, addressed to U.S. District Court for the District of
Maryland, 101 W. Lombard Street, Baltimore, MD 21201; The attorney for the government has
been served a copy of this document via regular U.S. mail.

Carlos Ortiz
Reg. No. 28906-037
United States Penitentiary
Canaan
P.O. Box 300
Waymart, PA. 18472

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
## APPEARANCE OF COUNSEL FORM

**BAR ADMISSION & ECF REGISTRATION:** If you have not been admitted to practice before the Fourth Circuit, you must complete and return an [Application for Admission](#) before filing this form.  If you were admitted to practice under a different name than you are now using, you must include your former name when completing this form so that we can locate you on the attorney roll.  Electronic filing by counsel is required in all Fourth Circuit cases.  If you have not registered as a Fourth Circuit ECF Filer, please complete the required steps at [www.ca4.uscourts.gov/cmecftop.htm](http://www.ca4.uscourts.gov/cmecftop.htm).

**THE CLERK WILL ENTER MY APPEARANCE IN APPEAL NO.** _____ as

[ ]Retained  [ ]Court-appointed(CJA)  [ ]Court-assigned(non-CJA)  [ ]Federal Defender  [ ]Pro Bono  [ ]Government

COUNSEL FOR: _____

_____as the
(party name)

appellant(s)    appellee(s)    petitioner(s)    respondent(s)    amicus curiae    intervenor(s)

_____
(signature)

_____         _____
Name (printed or typed)                          Voice Phone

_____         _____
Firm Name (if applicable)                        Fax Number

_____

_____         _____
Address                                          E-mail address (print or type)

### CERTIFICATE OF SERVICE

I certify that on _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____         _____
Signature                                        Date

11/17/2011
SCC

FILED:  October 4, 2013

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————————

No. 13-6447
(1:12-cv-00689-WDQ)

———————————————

CARLOS ORTIZ

Petitioner - Appellant

v.

UNITED STATES OF AMERICA

Respondent - Appellee

———————————————

O R D E R
———————————————

The court grants leave to proceed in forma pauperis.

For the Court--By Direction

/s/ Patricia S. Connor, Clerk